[Cite as *State v. Washington*, 2012-Ohio-2117.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    11CA010015 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVID T. WASHINGTON | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.    09CR078387 |

DECISION AND JOURNAL ENTRY

Dated: May 14, 2012

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, David Washington, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms in part and reverses in part.

I

{¶2} This Court recounted the facts underlying this matter in *State v. Washington*, 9th Dist. Nos. 10CA009767 & 10CA009768, 2011-Ohio-1149. Relevant to this appeal, a jury found Washington guilty of failure to comply, in violation of R.C. 2921.331(B), and obstructing official business, in violation of R.C. 2921.31(A). The trial court originally sentenced Washington on both counts, as well as other counts, and Washington appealed. After the trial court sentenced Washington, but before this Court determined his appeal, the Ohio Supreme Court released *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. Rather than apply *Johnson* in the first instance, this Court reversed Washington's sentence and remanded the matter

so that the trial court could consider whether any of his offenses were allied offenses of similar import under the new law set forth in *Johnson*. *Washington* at ¶ 22-28.

{¶3} The trial court held a resentencing hearing on May 12, 2011, at which the court found that Washington could be convicted of both failure to comply and obstructing official business. On May 18, 2011, the court issued a new sentencing entry, sentencing Washington to five years on his failure to comply charge and one year on his obstructing official business charge. The court ordered the sentences to run consecutively.

{¶4} Washington now appeals from his convictions and raises three assignments of error for our review. For ease of analysis, we consolidate two of the assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT ERRED IN IMPOSING SENTENCES FOR BOTH FAILURE TO COMPLY, AND OBSTRUCTING OFFICIAL BUSINESS, WHICH ARE ALLIED OFFENSES OF SIMILAR IMPORT.

{¶5} In his first assignment of error, Washington argues that the trial court erred by sentencing him to allied offenses of similar import. We agree.

{¶6} Ohio's allied offense statute provides as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25. Thus, two or more offenses arising from the same conduct and similar import only may result in one conviction. R.C. 2941.25(A). Two or more offenses may result in multiple convictions, however, if: (1) they are offenses of dissimilar import; (2) they are

separately committed; or (3) the defendant possesses a separate animus as to each. R.C. 2941.25(B).

{¶7} "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, at syllabus. The statutory elements of each offense are not to be compared in the abstract, severed from the particular facts underlying the offenses. *Id.*, overruling *State v. Rance*, 85 Ohio St.3d 632 (1999), syllabus (requiring textual comparison of elements in the abstract before a defendant's conduct will be considered). Instead, all of the justices of the Ohio Supreme Court have agreed that the conduct of the accused must be the starting point in any allied offense analysis. *Johnson* at ¶ 47-48; ¶ 64 (O'Connor, J., concurring); ¶ 78 (O'Donnell, J., concurring).

{¶8} In his plurality opinion, Chief Justice Brown set forth a two-part test. *Id.* at ¶ 47-49. First, one must determine whether the offenses at issue could be committed by the same conduct. *Id.* at ¶ 47. One does so by asking "whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other." (Emphasis sic.) *Id.* at ¶ 48. Second, one must ask whether the offenses actually were committed by the same conduct, "i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., dissenting). If the answer to both inquiries is yes, the offenses will merge. *Id.* at ¶ 50.

{¶9} In her concurring opinion, Justice O'Connor focused on the meaning of the phrase "allied offenses of similar import." *Johnson* at ¶ 63-64 (O'Connor, J., concurring). She defined that phrase as "multiple offenses that arise out of the same criminal conduct and are similar but

not identical in the significance of the criminal wrongs committed and the resulting harm." *Id.* at ¶ 64. Offenses are "'allied' when their elements align to such a degree that commission of one offense would probably result in the commission of the other offense." *Id.* at ¶ 66. They are of "'similar import' when the underlying conduct involves similar criminal wrongs and similar resulting harm." *Id.* at ¶ 67. Justice O'Connor specified that, in making its allied offense determination, a trial court must be guided by a review of the evidence introduced at trial and constrained by the theories and legal arguments set forth by the State. *Id.* at ¶ 69-70.

{¶10} While they differed in their analyses, all seven of the justices in *Johnson* also agreed that the offenses at issue in *Johnson* were allied offenses of similar import. *Johnson* at ¶ 56-57; ¶ 70-71 (O'Connor, J., concurring); ¶ 83 (O'Donnell, J., concurring). The facts in *Johnson* were as follows. Johnson beat a seven-year-old victim while the victim's mother was in a different room. Upon hearing a loud "thump" or "stomping," the mother investigated and found Johnson pushing her son to the floor. *Id.* at ¶ 54. The mother left the room, but returned shortly thereafter when she heard another loud "thump" or "stomp." *Id.* At that point, the mother observed her son shaking on the floor. *Id.* Her son died as a result of head injuries, and the State prosecuted Johnson for child endangering and felony murder, with child endangering as the predicate offense. Chief Justice Brown concluded that the State only pursued the second beating as the basis for both the child endangering charge and the felony murder charge and that the beating was "a discrete act that resulted in the simultaneous commission of allied offenses." *Id.* at ¶ 56. Justice O'Connor agreed that the State relied upon the same evidence to establish that Johnson's conduct violated the two separate statutes at issue. *Id.* at ¶ 70 (O'Connor, J., concurring). She noted that, while alternate theories may have existed, the record evinced that

the State did not pursue them. *Id.* Accordingly, she too, determined that the offenses were allied offenses of similar import that had to merge for purposes of sentencing. *Id.*

{¶11} Washington's convictions arose as a result of his leading police on a high-speed pursuit after stealing a car from a Midway Mall patron. *Washington*, 2011-Ohio-1149, at ¶ 2. The high-speed chase encompassed several miles of Interstate 90 as well as several side streets when Washington finally exited the highway. After two of the car's tires deflated and he could no longer drive it, Washington finally stopped the car, jumped out, and led the police on a foot chase through a wooded area. *Id.* The police apprehended Washington in a ditch in the woods not far from where he left the car. *Id.*

{¶12} As previously noted, the State prosecuted Washington for both failure to comply and obstructing official business. The subsection of the failure to comply statute with which the State charged Washington reads as follows: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C. 2921.331(B). The obstructing official business statute provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." R.C. 2921.31(A).

{¶13} The State did not supply Washington with a bill or particulars, but set forth its theory of the charges at trial. In opening statement, the prosecutor described Washington's failure to comply count as stemming from his failure to stop his vehicle and his attempt to accelerate and escape when Officer Joe Novosielski activated his lights and siren. As to the obstructing official business count, the prosecutor stated:

> Obstructing official business has to do, it's very [] similar to the assault on a police officer, both counts of that is when [Washington] ran he imperiled not only the officers' lives, and you will see as Officer [Larry] Miller is pursuing to catch up to this chase, the people in front of him necessitated him slamming on his brakes, dodging other people on the road, so not only was Officer Miller and the other officers in danger, but so were other people like you that were out there driving eastbound on I-90 on February 26th of this year.

The prosecutor did not focus on any particular counts in his closing argument. He did once again emphasize, however, the fact that Washington endangered the lives of officers and other people by engaging in a high speed chase rather than stopping the car he was driving.

{¶14} At the resentencing hearing following this Court's remand to apply *Johnson*, the State argued that Washington's failure to comply count arose from the high speed chase while his obstructing official business count arose from his decision to engage in a foot chase with officers after stopping the car. The State averred that the two counts amounted to two separate acts of conduct committed with a separate animus. The trial court accepted the State's rationale and determined that Washington's offenses were not allied because: (1) the crime of failing to comply contains different elements than the crime of obstructing official business; (2) Washington's flight into the woods constituted a new course of conduct that created a "different set of risks * * * to the public"; and (3) the foot chase presented officers with "unique dangers" that the State did not have to "present any special testimony about."

{¶15} The trial court's reasoning here does not comport with *Johnson*. A statutory analysis distinguishing the elements of the two counts at issue was not an appropriate focus, as that analysis would harken back to the rationale embraced in *Rance*. *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, at syllabus, overruling *Rance*, 85 Ohio St.3d 632. And while risk to the public could conceivably sound in an import analysis, in which one must consider the defendant's state of mind, *Johnson* at ¶ 49, and whether "similar resulting harm occurred,"

*Johnson* at ¶ 67 (O'Connor, J., concurring), risk must not simply be couched in terms of different societal interests that the legislature intended certain statutes to protect. *See Johnson* at ¶ 35 (criticizing the analysis the majority employed in *State v. Brown*); *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 36-37 (exempting from application the general allied offense analysis when the legislature intended that different "societal interests [be] protected by the relevant statutes"). The focus of the analysis must be on the particular conduct of the specific defendant at issue. *Johnson* at syllabus. Moreover, the analysis must be driven by the record and the evidence/theories the State actually introduced, not retrospective hypothecating about what charges a defendant's conduct could have supported. *Id.* at ¶ 56-57; ¶ 69-70 (O'Connor, J., concurring).

{¶16} The State's theory at trial was that the high-speed car chase in which Washington engaged formed the basis for both his failure to comply and obstructing official business charges. The trial court permitted the State to argue at the resentencing that the subsequent foot chase could support the latter charge. The court did so, in part, because the State did not have the benefit of *Johnson* at the time the case was tried and "things might have been framed and argued a bit differently, given the *Johnson* case." Yet, the parties in *Johnson* did not have the benefit of *Johnson* either. Alternative theories that the State might have pursued, but did not, cannot form the basis for the State's argument at resentencing. Instead, the allied offense analysis must derive from the evidence introduced at trial, the record, and the legal arguments actually raised. *Johnson* at ¶ 56; ¶ 69-70 (O'Connor, J., concurring). At no point before resentencing for the application of *Johnson* did the State raise the argument that Washington's flight from the police on foot amounted to a separate act of conduct for which Washington possessed a separate animus.

{¶17} The evidence here was that Washington fled from the police and continued to flee until he was apprehended. His flight from the police amounted to a continuous course of conduct, beginning on the highway and ending in the woods. The State relied upon the same evidence to prove both Washington's failure to comply and obstructing official business charges. As such, the State in no way differentiated between the two. The record reflects that Washington's failure to comply count and his obstructing official business count were not: (1) of dissimilar import; (2) committed separately; or (3) committed with a separate animus. *See* R.C. 2941.25(B). Washington acted with one specific goal in mind: to evade the police. It was possible to commit both failure to comply and obstructing official business with the same conduct, and the evidence was that Washington actually committed both offenses with the same state of mind. *Johnson* at ¶ 48-49. His offenses arose from the same conduct, involved similar criminal wrongs, and resulted in similar harm. *Id.* at ¶ 70 (O'Connor, J., concurring). The conclusion, therefore, must be that his offenses are allied offenses of similar import that must merge. *See State v. Congrove*, 5th Dist. No. 11-CA-5, 2012-Ohio-1159, ¶ 26-29 (concluding that offenses were allied under *Johnson* because the evidence showed that the charges arose from the same conduct and the defendant acted with a single state of mind).

{¶18} The trial court erred by determining that Washington could be separately convicted of both failure to comply and obstructing official business. Washington's first assignment of error is sustained on this basis. "[T]he matter is remanded for resentencing, at which point the State can elect which allied offense it will pursue against Washington, consistent with the Supreme Court's directive in *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, paragraph one of the syllabus." *Washington*, 2011-Ohio-1149, at ¶ 22.

## Assignment of Error Number Two

THE VERDICT FOR OBSTRUCTING OFFICIAL BUSINESS IS AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF MR. WASHINGTON'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.

## Assignment of Error Number Three

THE VERDICT FOR OBSTRUCTING OFFICIAL BUSINESS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF MR. WASHINGTON'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.

{¶19} In his second and third assignments of error, Washington argues that his conviction for obstructing official business is based on insufficient evidence and is against the manifest weight of the evidence.

> Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus. "This Court has recognized that, by the plain language of *Perry*, 'the doctrine of res judicata is directed at procedurally barring convicted defendants from relitigating matters which were, or could have been, litigated on direct appeal.'" *State v. McShepard*, 9th Dist. No. 11CA010000, 2011-Ohio-6752, ¶ 13, quoting *State v. Widman*, 9th Dist. No. 00CA007681, 2001 WL 519493, *1 (May 16, 2001).

{¶20} Washington previously had a direct appeal in this matter. In that direct appeal, this Court rejected a manifest weight challenge to one of Washington's other convictions.

*Washington*, 2011-Ohio-1149, at ¶ 6-19. We only remanded Washington's case for resentencing due to the allied offense issue. *Id.* at ¶ 22-29. Having had the benefit of a prior direct appeal during which additional matters could have been litigated, Washington cannot now challenge another conviction on the bases of sufficiency and weight. *Perry* at paragraph nine of the syllabus. His arguments are barred by res judicata. *State v. Kerns*, 9th Dist. No. 11CA0051-M, 2011-Ohio-6788, ¶ 8 (concluding, after first having remanded the matter for resentencing due to an invalid post-release control notification, that res judicata barred challenge to sex offender's classification); *State v. Washington*, 9th Dist. No. 25784, 2011-Ohio-6600, ¶ 11-12 (concluding, after having remanded the matter for resentencing on the issue of allied offenses, that res judicata barred challenge to verdict forms); *State v. Wooden*, 9th Dist. No. 25607, 2011-Ohio-4942, ¶ 10-12 (concluding, after direct appeal and a resentencing for post-release control, that res judicata barred challenge to the sufficiency of the defendant's indictment). As such, his second and third assignments of error are overruled.

III

{¶21} Washington's first assignment of error is sustained, and his remaining assignments of error are overruled. The sentences on Washington's failure to comply and obstructing official business counts are reversed, and the matter is remanded to the trial court for the State to elect which allied offense it will pursue. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,<br>reversed in part,<br>and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

BELFANCE, J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶22} I agree with the majority's resolution of the second and third assignments of error.

{¶23} I respectfully dissent in regard to the majority's resolution of Washington's first assignment of error. Applying the test enunciated in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, I would conclude that Washington's convictions for failure to comply and

obstructing official business were not allied offenses of similar import. This Court has already recognized and articulated the appropriate test as follows:

> In *Johnson* at ¶ 44, the Ohio Supreme Court held that in determining whether two offenses are allied offenses of similar import, "the conduct of the accused must be considered." The court must first determine "whether it is possible to commit one offense *and* commit the other with the same conduct," and, if so, then "the court must determine whether the offenses were committed by the same conduct, i.e. 'a single act, committed with a single state of mind.'" *Id.* at ¶ 48, 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J. concurring). If the same conduct constituted both offenses, then they must be merged. *Johnson* at ¶ 50. Failure to merge allied offenses of similar import constitutes plain error, and prejudice exists even where a defendant's sentences are to run concurrently because "a defendant is prejudiced by having more convictions that are authorized by law." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31.

*State v. Ross*, 9th Dist. No. 25778, 2012-Ohio-1389, ¶ 23.

{¶24} In enunciating its test from *Johnson*, the majority quotes extensively from Justice O'Connor's concurring opinion, which is not controlling. Moreover, this analysis places an additional and onerous burden on the State where one does not exist. The State maintains the burden of proving every element of every charged offense beyond a reasonable doubt. However, after conviction, the duty to merge allied offenses of similar import for purposes of sentencing lies with the trial court, even in the face of an unlawful joint recommendation by the parties. *Underwood* at ¶ 26. Accordingly, I believe the majority misconstrues the test enunciated in *Johnson* when it relies heavily on Justice O'Connor's concurring opinion and misconstrues it to shift the burden to the State to neatly frame at the time of trial all issues which arise, if at all, only at a sentencing. The State's theory of the case, enunciated during opening statement and closing argument, does not constrain the trier of fact to finding a criminal defendant guilty solely on the basis of that theory where the application of the law to the evidence supports a finding of guilt beyond a reasonable doubt on the charged offenses. It is the application of the law to the

evidence, and not the proffered theory of the case, which forms the basis for the verdict. Where the State has obtained a conviction, it should then be free to put forth at sentencing its argument against merger. Until sentencing, the issue of merger is not ripe. Therefore, I would not limit the analysis of the merger of offenses to only those theories espoused by the State during trial. In fact, limiting the consideration to the State's (and/or defendant's, for that matter) theory of the case and any argument made at either the trial or sentencing is inherently improper because the trial court has no authority to impose a sentence contrary to law. Instead, the trial court must independently apply the *Johnson* test to determine whether the merger of offenses is required irrespective of any argument or even agreement of the parties.

{¶25} I would rely on the clear and concise recitation of the *Johnson* test we recognized in *Ross*, *supra*. Applying that test to the evidence in the instant case, I would conclude that Washington's offenses were not allied offenses of similar import. Washington's conviction for failure to comply was based on evidence that he continued to operate a car after receiving a signal from police to stop. He ultimately stopped the car only after the police punctured two of his tires. After stopping the car, however, he exited the vehicle and fled on foot to prevent the police from performing official lawful duties, in this case investigating a reported theft of a car. I believe, under the facts of this case, that Washington's refusal to stop the car and his flight on foot constituted two distinct acts. He would have known that remaining in the disabled vehicle would have enabled the police to question him about the theft. His flight on foot was a separate act performed with the intent to prevent the police from both discovering his role in the theft and arresting him. To determine otherwise would simply encourage criminals to take any actions necessary to evade the police without fear of repercussions beyond those arising out of the

original criminal act. Because I would conclude that Washington's convictions were not allied offenses of similar import, I would overrule his first assignment of error.

APPEARANCES:

PAUL A. GRIFFIN, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.