[Cite as *State v. Washington*, 2014-Ohio-1876.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | | C.A. No.      11CA010015 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVID T. WASHINGTON | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No.      09CR078387 |

DECISION AND JOURNAL ENTRY

Dated: May 5, 2014

WHITMORE, Presiding Judge.

{¶1} This case is before us on remand from the Ohio Supreme Court. This Court affirms.

I

{¶2} This Court recounted the facts underlying this matter in *State v. Washington* ("*Washington I*"), 9th Dist. Lorain Nos. 10CA009767 & 10CA009768, 2011-Ohio-1149, and *State v. Washington* ("*Washington II*"), 9th Dist. Lorain No. 11CA010015, 2012-Ohio-2117. Relevant to this appeal, a jury found Washington guilty of failure to comply, in violation of R.C. 2921.331(B), and obstructing official business, in violation of R.C. 2921.31(A).

> Washington's convictions arose as a result of his leading police on a high-speed pursuit after stealing a car from a Midway Mall patron. The high-speed chase encompassed several miles of Interstate 90 as well as several side streets when Washington finally exited the highway. After two of the car's tires deflated and he could no longer drive it, Washington finally stopped the car, jumped out, and led the police on a foot chase through a wooded area. The police apprehended Washington in a ditch in the woods not far from where he left the car.

(Internal citations omitted.) *Washington II* at ¶ 11. The trial court originally sentenced Washington on both counts, as well as other counts, and Washington appealed. After the trial court sentenced Washington, but before this Court determined his appeal, the Ohio Supreme Court released *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. Rather than apply *Johnson* in the first instance, this Court reversed Washington's sentence and remanded the matter so that the trial court could consider whether his failure to comply and obstructing official business offenses were allied offenses of similar import under the new law set forth in *Johnson*. *Washington I* at ¶ 22-28.

{¶3} The trial court held a resentencing hearing on May 12, 2011, at which the court found that Washington could be convicted of both failure to comply and obstructing official business. On May 18, 2011, the court issued a new sentencing entry, sentencing Washington to five years on his failure to comply charge and one year on his obstructing official business charge. The court ordered the sentences to run consecutively. Washington then appealed from the trial court's judgment.

{¶4} In *Washington II*, this Court held that the trial court erred by sentencing Washington on both his failure to comply and obstructing official business counts, as the two were allied offenses of similar import. *Washington II* at ¶ 5-18. We held that the State "relied upon the same evidence" to prove both offenses and "in no way differentiated between the two" at trial. *Id.* at ¶ 17. Specifically, at trial, the State focused solely on the car chase. *Id.* at ¶ 13. At the resentencing hearing, however, the State shifted to arguing that "Washington's failure to comply count arose from the high speed chase while his obstructing official business count arose from his decision to engage in a foot chase with officers after stopping the car." *Id.* at ¶ 14. We rejected the State's new theory and held that:

[a]lternative theories that the State might have pursued, but did not, cannot form the basis for the State's argument at resentencing. Instead, the allied offense analysis must derive from the evidence introduced at trial, the record, and the legal arguments actually raised.

*Id.* at ¶ 16. Thus, we remanded the matter to the trial court for the State to elect which allied offense it wished to pursue on resentencing. *Id.* at ¶ 18.

{¶5} The State appealed this Court's decision to the Ohio Supreme Court, and the Supreme Court accepted review. In *State v. Washington* ("*Washington III*"), 137 Ohio St.3d 427, 2013-Ohio-4982, the Supreme Court reversed this Court's decision and held that

[w]hen deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus.

*Washington III* at syllabus. The Supreme Court remanded the matter to this Court for us to consider the entire record, including the information the State presented at the resentencing hearing. *Id.* at ¶ 23-24. Per the order of this Court, both Washington and the State also filed supplemental briefs on the allied offense issue.

{¶6} The appeal is now before us on remand from the Supreme Court.

II

Assignment of Error Number One

THE TRIAL COURT ERRED IN IMPOSING SENTENCES FOR BOTH FAILURE TO COMPLY, AND OBSTRUCTING OFFICIAL BUSINESS, WHICH ARE ALLIED OFFENSES OF SIMILAR IMPORT.

{¶7} In his first assignment of error, Washington argues that the trial court erred by sentencing him on allied offenses of similar import. We disagree.

{¶8} "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution,

which prohibits multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 23. That statute provides as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25. An appellate court applies "a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination." *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28.

{¶9} Two or more offenses may result in multiple convictions if: (1) they are offenses of dissimilar import; (2) they are separately committed; or (3) the defendant possesses a separate animus as to each. *Washington III*, 137 Ohio St.3d 427, 2013-Ohio-4982, at ¶ 12. The first step of the analysis requires a court to consider the import of the offenses (i.e., whether they are of similar or dissimilar import). *Id.* at ¶ 13. The import analysis entails more than an abstract review of the elements of the offenses involved. *Id.* at ¶ 16, citing *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. In undertaking the import analysis, "the conduct of the accused must be considered." *Washington III* at ¶ 15, quoting *Johnson* at syllabus. *See also Johnson* at ¶ 48 ("[T]he question is whether it is possible to commit one offense *and* commit the other with the same conduct * * *.").

{¶10} The second step of the analysis requires a court to consider whether the offenses at issue "were committed separately or with a separate animus." *Washington III* at ¶ 13. *See also Johnson* at ¶ 49 ("If the multiple offenses can be committed by the same conduct, then the

court must determine whether the offenses were committed by the same conduct * * *.") In applying the second step of the analysis, "a court must review the entire record, including arguments and information presented at the sentencing hearing." *Washington III* at ¶ 24. "If the offenses were committed by the same conduct and with a single animus, the offenses merge." *Id.* at ¶ 13. The defendant bears the burden of establishing his entitlement to the protection, provided by R.C. 2941.25. *Id.* at ¶ 18.

{¶11} R.C. 2921.331(B) provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Whoever commits the foregoing offense is guilty of failure to comply with an order or signal of a police officer. R.C. 2921.331(C)(1).

{¶12} R.C. 2921.31(A) provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Whoever commits the foregoing offense is guilty of obstructing official business. R.C. 2921.31(B). Obstructing official business is a fifth-degree felony if the crime "creates a risk of physical harm to any person." *Id.*

{¶13} As previously noted, Washington's convictions arose as a result of a high-speed car chase that ultimately led to a foot chase after the police successfully deflated the tires of the car Washington had stolen. In his supplemental brief, Washington argues that his conduct while inside the car must serve as the basis for both of his offenses because, given the State's argument at trial, it is evident that "[t]he foot chase played no role in the jury's determination of guilt." The State responds that the law of the case doctrine applies in this matter and this Court may not

deviate from the Supreme Court's dictate in *Washington III*, regarding the State's argument at trial. At this point, we must pause to discuss the application of the law of the case doctrine in this matter.

{¶14} In *Washington III*, the Supreme Court wrote:

> At trial, the state never argued that the car chase was the basis for both the failure-to-comply and obstructing-official-business offenses. The state presented evidence of both the car chase and the foot chase, and it repeatedly referred to both chases during opening statement and closing argument. In fact, the foot chase could not have established the failure-to-comply offense, because that offense requires proof that the defendant was "operat[ing] a motor vehicle." R.C. 2921.331(B). At best, it is unclear whether the state relied on the foot chase to support the obstructing-official-business count. It cannot be said that the state's argument at trial was inconsistent with its argument at the resentencing hearing.

*Washington III*, 137 Ohio St.3d 427, 2013-Ohio-4982, at ¶ 22. There is no question that the law of the case doctrine generally would bind this Court to accept the foregoing determination. *See Nolan v. Nolan*, 11 Ohio St.3d 1 (1984), syllabus ("Absent extraordinary circumstances, * * * an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case."). The doctrine, however, ceases to apply in instances where "extraordinary circumstances" exist. *Id.*

{¶15} After the Supreme Court's remand, this Court received the record in this matter from the clerk of courts. The record this Court received contained three trial transcripts, all three of which had stickers bearing the Supreme Court case number assigned to *State v. Washington* and a receipt date of November 5, 2012. Two of the three transcripts, however, were transcripts from a different trial. Specifically, those two transcripts were transcripts from the trial of Douglas Rivers, Washington's separately indicted and separately tried co-defendant. *See State v. Rivers*, 9th Dist. Lorain No. 10CA009772, 2011-Ohio-2447. The only transcript from Washington's trial was the second volume of the transcript. This Court contacted the clerk of

courts and located the first and third volumes of Washington's trial transcripts. Neither transcript bears the Supreme Court's sticker. Therefore, it appears the complete transcript from Washington's trial may not have been before the Supreme Court when it issued *Washington III*.

{¶16} This Court is mindful of the law of the case doctrine. Its application in this instance, however, must be tempered, given the unique circumstances that exist. This Court, in keeping with the law set forth in *Washington III*, will "review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus." *Washington III* at syllabus. Yet, in doing so, this Court will consider the record anew.

{¶17} Washington's failure to comply and obstructing convictions could be committed with the same conduct if both arose from the high-speed car chase on which he led the police. *See id.* at ¶ 13-15 (import analysis defined). At the resentencing hearing on the allied offense issue, it was Washington's burden to establish that he was entitled to the protection of the allied offense statute. The State argued that the high-speed car chase formed the basis of Washington's failure to comply count while the foot chase that occurred once he ran from the car formed the basis of the obstructing official business count. Under that scenario, the two crimes could not be committed with the same conduct. *See id.* Specifically, the foot chase could not serve as the basis for the failure to comply count because that count "require[d] proof that the defendant was 'operat[ing] a motor vehicle.'" *Id.* at ¶ 22, quoting R.C. 2921.331(B). Moreover, under that scenario, the two crimes were separately committed. *See Washington III* at ¶ 13 ("The second prong [of an allied offense analysis] looks to the defendant's conduct and requires a determination whether the offenses were committed separately * * *."). *See also Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, at ¶ 49. The conduct supporting the failure to comply count

ended once the police successfully deflated the tires on the stolen car and Washington was forced to stop driving it.

{¶18} At that point, Washington could have surrendered. Instead, he chose to exit the car and flee on foot, causing several officers to follow him into a wooded area and pull him from his hiding place. Obstruction of official business only requires "a *risk* of physical harm to any person," so there was no need for specific testimony at trial regarding physical harm to any person during the foot chase. (Emphasis added.) R.C. 2921.31(B). The evidence in the record supports the conclusion that the officers who chased Washington through the woods faced at least a risk of harm, given that, prior to the foot chase, he had knocked a woman to the ground, stolen her car, and led the police on an extremely dangerous car chase. *See State v. Woodson*, 9th Dist. Wayne No. 07CA0044, 2008-Ohio-1469, ¶ 27-28.[1] The foot chase Washington initiated constituted separate conduct that could serve as the basis for his obstructing count. Washington has not shown that the State in fact relied upon the same conduct to support both of his charged offenses. *See Washington III* at ¶ 18 (defendant bears the burden of demonstrating his entitlement to the protection provided by R.C. 2941.25). Likewise, he has not shown that the State bound itself to a particular theory of the evidence at trial. *See id.* at ¶ 19 ("[T]he state's theory at trial may, in some cases, definitively support a finding that the offenses at issue arose from the same conduct.").

{¶19} During opening statement, the prosecutor stated:

[T]he felonious assault on a police officer has to do with [Washington] driving the vehicle directly at the officer in an attempt to hit him.

He then later stated:

---

[1] Notably, Washington did not challenge the sufficiency of either his failure to comply or his obstructing official business convictions on direct appeal.

Assault on a police officer. Receiving stolen property and obstructing official business. Obstructing official business has to do, *it's very same similar to the assault on a police officer*, both counts of that is when the defendant ran he imperiled not only the officers' lives, and you will see as Officer Miller is pursuing to catch up to this chase, the people in front of him *necessitated him slamming on his brakes, dodging other people on the road*, so not only was Officer Miller and the other officers in danger, but so were other people like you *that were out there driving eastbound on I-90 on February 26th of this year.*

(Emphasis added.) The State never connected the foot chase to the charge of obstruction in opening statement. Nevertheless, the State referenced the foot chase in both its opening and closing and evidence of the foot chase was presented at trial. Moreover, the State did not connect any of the evidence to any particular charge in closing argument. *Compare State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, ¶ 100. The record does not support Washington's argument that the State clearly articulated a theory of the case at trial that was inconsistent with its theory at his resentencing. *See Washington III* at ¶ 19.

{¶20} The trial court did not err by concluding that Washington could be sentenced on both his obstructing official business and failure to comply counts. Washington's first assignment of error is overruled.

### Assignment of Error Number Two

THE VERDICT FOR OBSTRUCTING OFFICIAL BUSINESS IS AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF MR. WASHINGTON'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.

### Assignment of Error Number Three

THE VERDICT FOR OBSTRUCTING OFFICIAL BUSINESS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF MR. WASHINGTON'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.

**{¶21}** Washington's previous appeal before this Court also included sufficiency and weight challenges to his conviction for obstructing official business. *See Washington II*, 2012-Ohio-2117, at ¶ 19-20. This Court determined that his sufficiency and weight arguments were barred by the doctrine of res judicata because he failed to raise them in his first direct appeal. *Id.* Although the Supreme Court reversed this Court's judgment when it issued *Washington III*, its reversal pertained strictly to the allied offense issue. This Court, therefore, need not revisit Washington's sufficiency and manifest weight assignments of error. We adhere to our prior determination with regard to those assignments of error.

## III

**{¶22}** Washington's first assignment of error is overruled. This Court adheres to its previous judgment with regard to his remaining assignments of error. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT

BELFANCE, J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

**{¶23}** I concur in the majority's opinion that the trial court did not err in sentencing Washington on both obstructing official business and failure to comply. I write separately, however, to emphasize that the Ohio Supreme Court recognized that the State's theory of its case at trial is not binding or relevant to the issue of merger at sentencing. The high court clarified that, notwithstanding divided opinions within *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, no justice subscribed to the belief that the sentencing court must limit its determination regarding merger to the State's theory of its case at trial. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 17. In fact, after emphasizing that the burden of demonstrating that he is entitled to the statutory protection against multiple punishments for a single criminal act rests with the defendant, the *Washington* court implicitly concluded that the State cannot be bound by its theory during trial for purposes of sentencing. *Id.* at ¶ 18-21 (recognizing the inequity in binding the State as "[i]t would be equally unfair to bind a defendant to the theories presented at trial without allowing the defendant to present merger arguments at sentencing."). The high

court acknowledges that the State's theory at trial may indeed coincide with its arguments regarding merger at sentencing. *Id.* at ¶ 19. I agree. On the other hand, it may not. In any event, the State is not constrained at sentencing by its theory at trial.

{¶24} Accordingly, it is irrelevant that, as the majority notes in paragraph 18, Washington "has not shown that the State bound itself to a particular theory of the evidence at trial." *Washington*, 2013-Ohio-4982, clarifies that the defendant can never make such a showing. Thus, while I concur in the majority's resolution of the first assignment of error, I believe that any discussion of the State's theory of its case at trial is not relevant to the determination of whether offenses merge for purposes of sentencing.

APPEARANCES:

PAUL A. GRIFFIN, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.