[Cite as *State v. Owens*, 2014-Ohio-1394.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 26837 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEVON OWENS | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 10 06 1740 |

DECISION AND JOURNAL ENTRY

Dated: March 31, 2014

MOORE, Presiding Judge.

{¶1} Defendant-Appellant, Devon D. Owens, appeals from the February 20, 2013 judgment entry of the Summit County Court of Common Pleas. We affirm.

I.

{¶2} In *State v. Owens*, 9th Dist. Summit No. 25872, 2012-Ohio-3667, ¶ 2-4, this Court summarized the facts and procedural history of this matter as follow:

> Seventy-three-year-old C.W. died as a result of manual strangulation in connection with a sexual assault. Her granddaughter and her granddaughter's boyfriend discovered her body and found the perpetrator sitting on C.W.'s bed in a state of partial undress. The perpetrator fled through a bedroom window and disappeared. A citizen's tip in response to a composite sketch led police to Mr. Owens, who was arrested when a DNA sample that he provided was consistent with samples obtained from the crime scene.
>
> Mr. Owens was charged with aggravated murder in violation of R.C. 2903.01(B), with a death penalty specification, two counts of rape in violation of R.C. 2907.02(A)(2), and one count of aggravated burglary in violation of R.C. 2911.11(A)(1). A jury found him guilty of all of the charges. When the jury informed the trial court that it had concluded its deliberations and reached a verdict, one juror told the bailiff that she had received several calls from an

inmate at the Summit County Jail. The bailiff noted her phone number, but did not inform the trial court until after the verdict had been announced in court. Without communicating with the attorneys, the trial court asked a deputy sheriff to investigate the matter. From the results of the investigation, the trial court concluded that the calls had no connection to the trial. The court informed the attorneys of the incident shortly before the beginning of the penalty phase. At that point, with input from counsel, the trial court individually questioned the jurors about their deliberations in light of the phone calls. The trial court concluded that the jury's deliberations were not affected and denied Mr. Owens' motion for a new trial.

The case proceeded to the penalty phase, and the jury found that the aggravating factors supporting imposition of the death penalty did not outweigh the factors that mitigated against it. The trial court sentenced Mr. Owens to life in prison without the possibility of parole with respect to the aggravated murder conviction and to ten-year prison terms for each of the three other convictions. Mr. Owens appealed.

{¶3} In his direct appeal, Mr. Owens raised several issues, including whether his offenses should merge pursuant to the Supreme Court of Ohio's decision in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. We affirmed as to all other issues, but reversed and remanded for the trial court to consider whether the offenses should merge pursuant to *Johnson*. *Owens* at ¶ 19.

{¶4} Upon remand, the trial court held a *Johnson* hearing and determined that: "the 1st degree felony offenses [] do not merge with each other, nor do they merge with the Special Felony offense. These offenses remain separate and distinct and the earlier sentence imposed by this [c]ourt by journal entry on March 10, 2011, are correct and remain in full force and effect."

{¶5} Mr. Owens appealed, and raises one assignment of error for our consideration.

II.

**ASSIGNMENT OF ERROR**

THE COURT BELOW ABUSED ITS DISCRETION BY RULING THE COUNTS DID NOT MERGE.

{¶6} In his sole assignment of error, Mr. Owens specifically argues that, pursuant to *Johnson*, (1) his convictions for rape should merge with his conviction for aggravated murder, (2) his convictions for rape should merge with his conviction for aggravated burglary, and (3) his conviction for aggravated murder should merge with his conviction for aggravated burglary.

{¶7} We review a trial court's merger determination de novo. *See State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1.

{¶8} Ohio's allied offense statute provides as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25. "Thus, two or more offenses arising from the same conduct and similar import only may result in one conviction." *State v. Linde*, 9th Dist. Summit No. 26714, 2013-Ohio-3503, ¶ 12, citing R.C. 2941.25(A). "Two or more offenses may result in multiple convictions, however, if: (1) they are offenses of dissimilar import; (2) they are separately committed; or (3) the defendant possesses a separate animus as to each." *Linde* at ¶ 12, citing R.C. 2941.25(B).

{¶9} "When determining whether two offenses are allied offenses of similar import subject to merge under R.C. 2941.25, the conduct of the accused must be considered." *Johnson*, 2010-Ohio-6314, at syllabus. A plurality of the Ohio Supreme Court set forth a two-part test to analyze whether two offenses are allied offenses of similar import. First, one must determine whether the offenses at issue could be committed by the same conduct. *Id*. at ¶ 47. One does so by asking "whether it is possible to commit one offense *and* commit the other with the same

conduct, not whether it is possible to commit one *without* committing the other." (Emphasis sic.) *Id*. at ¶ 48. *See also id*. at ¶ 66 (O'Connor, J., concurring.) (offenses are allied "when their elements align to such a degree that commission of one offense would probably result in the commission of the other offense"). Second, one must ask whether the offenses actually were committed by the same conduct, "i.e., 'a single act, committed with a single state of mind.'" *Johnson* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., concurring). If the answer to both inquiries is yes, the offenses will merge. *Johnson* at ¶ 50. Using the *Johnson* analysis, we will consider each count discussed above.

## Rape and Aggravated Murder

{¶10} The elements of rape, as provided in R.C. 2907.02(A)(2), are "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The elements of aggravated murder, as provided in R.C. 2903.01(B), are "[n]o person shall purposely cause the death of another * * * while committing * * *, or while fleeing immediately after committing * * * rape[.]"

{¶11} The first prong of *Johnson*, as explained above, requires us to determine whether rape and aggravated murder *could* be committed by the same conduct. While the elements of these two offenses do not align such that commission of one probably results in the commission of the other, it is possible to commit the two offenses with the same conduct. For example, one hypothetical scenario would be where rape was committed using a sharp object, which, in turn, created internal injuries, causing the victim to bleed to death.

{¶12} Assuming then, for purposes of this analysis, that it is possible to commit rape and aggravated murder with the same conduct, we now look to the second prong of *Johnson*, i.e.

whether the evidence supports that Mr. Owens actually committed these crimes with the same conduct or animus.

{¶13} Dr. Lisa Kohler, chief medical examiner in Summit County, testified that C.W. died as a result of asphyxia due to strangulation, and that, prior to death, she was vaginally and anally raped. There is no evidence in the record suggesting that the acts of rape, as horrendous as they were, contributed to the death of C.W. The acts of rape occurred in different anatomical locations on C.W.'s body from where the act which caused her death (i.e. strangulation) occurred. Also, on cross examination, Dr. Kohler could not specify the time interval between the rapes and murder, whether five minutes or a half-hour. Nor could she say that the rapes and murder happened at the same time. Further, Mr. Michael Carson, C.W.'s granddaughter's boyfriend, testified that when he entered C.W.'s apartment, he saw Mr. Owens sitting partially undressed on her bed, and Mr. Owen's stated that he was C.W.'s "boyfriend."

{¶14} The record reflects that the State presented evidence at trial that Mr. Owens committed the crimes of rape first, and then the crime of aggravated murder. The crimes were committed with separate conduct and with a separate animus. Mr. Owens committed the rapes when he vaginally penetrated C.W. with his penis, and inserted a butter knife covered with a towel into her anus. Mr. Owens committed aggravated murder when he manually strangled C.W. Further, Mr. Owens' statement that he was C.W.'s "boyfriend" could strengthen the position that the rapes and murder occurred with a separate animus: he raped C.W. for sexual gratification, and then strangled her to cover up the rapes.[1]

---

[1] In his argument on appeal, Mr. Owens primarily focuses upon the trial court's alleged misapplication of *State v. Metcalf*, 2d Dist. Montgomery No. 24338, 2012-Ohio-6045, which contains numerous factual differences from this matter. We note that *Metcalf* is a Second District case and is, therefore, not binding in this district.

{¶15}   Mr. Owens also argues that because the language in the indictment states that "the Aggravated Murder was committed while [Mr. Owens] was committing, attempting to commit, *or fleeing immediately after committing or attempting to commit Rape, and/or Aggravated Burglary*," his convictions for aggravated murder, aggravated burglary, and rape should automatically merge.  (Emphasis added.)  However, the plain language of the indictment states that the murder could have occurred when Mr. Owens was "fleeing immediately after committing * * * Rape, and/or Aggravated Burglary."  This language clearly creates the option that Mr. Owens strangled C.W. *after* raping her, which, in and of itself, constitutes separate conduct.

{¶16}   Accordingly, pursuant to the second prong of *Johnson*, these crimes do not merge.

**Rape and Aggravated Burglary**

{¶17}   The elements of rape, as provided in R.C. 2907.02(A)(2), are "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."  The elements of aggravated burglary, as provided in R.C. 2911.11(A)(1), are "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with *purpose to commit* in the structure or in the separately secured or separately occupied portion of the structure *any criminal offense*, if any of the following apply: (1) [t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]"  (Emphasis added.)

{¶18}   "[C]ourts have determined 'it is possible to commit rape under R.C. 2907.02(A)(2) and aggravated burglary under R.C. 2911.11(A)(1) with the same conduct.'" *State v. Bryant*, 10th Dist. Franklin No. 12AP-703, 2013-Ohio-5105, ¶ 17, quoting *State v. Nguyen,*

4th Dist. No. 12CA14, 2013-Ohio-3170, 2013 WL 3816605, ¶ 108. "The force or threat of force used to commit the rape could satisfy the requirement for aggravated burglary that the offender 'inflicts, or attempts or threatens to inflict physical harm on another.'" *Nguyen* at ¶ 108, quoting R.C. 2911.11(A)(1). "However, even though the offenses are of similar import, a defendant 'can be sentenced for both if he committed the crimes separately or with a separate animus.'" *Bryant* at ¶ 17, quoting *Nguyen* at ¶ 108.

{¶19} Assuming then, for purposes of this analysis, that it is possible to commit rape and aggravated burglary with the same conduct, we now look to the second prong of *Johnson*, i.e. whether the evidence supports the contention that Mr. Owens actually committed these crimes with the same conduct or animus.

{¶20} The evidence in the record indicates that a struggle ensued between Mr. Owens and C.W. when he entered her apartment on May 28, 2010. Anna Romito, a crime scene detective, testified that (1) C.W.'s oxygen tank was found at the front door with its tubing running down the hall to the bedroom where her body was found, (2) C.W.'s overturned slippers were found next to a pair of sunglasses mid-way down the hall on the floor, and (3) C.W.'s body was found in a bedroom at the end of the hall. As previously stated, the evidence also supports that C.W. was vaginally and anally raped prior to her death.

{¶21} Based upon the record before us, the State presented evidence at trial demonstrating that Mr. Owens committed the crimes of rape and aggravated burglary with separate conduct and with a separate animus. There was evidence that Mr. Owens committed aggravated burglary when he entered C.W.'s apartment and attacked her, causing C.W. to leave her oxygen tank at the front door and to lose her slippers mid-way down the hall. The rapes occurred subsequent to this attack in the bedroom and prior to C.W.'s death.

**{¶22}** Accordingly, pursuant to the second prong of *Johnson*, these crimes do not merge.

## Aggravated Burglary and Aggravated Murder

**{¶23}** The elements of aggravated burglary, as provided in R.C. 2911.11(A)(1), are "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply: (1) [t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]" The elements of aggravated murder, as provided in R.C. 2903.01(B), are "[n]o person shall purposely cause the death of another * * * while committing * * *, or while fleeing immediately after committing * * * rape[.]

**{¶24}** Inasmuch as the conduct of committing aggravated murder can satisfy an element of aggravated burglary, i.e. "[t]he offender inflicts, or attempts or threatens to inflict physical harm on another," we conclude that the two offenses could be committed with the same conduct. R.C. 2911.11(A)(1). *See State v. Walker*, 8th Dist. No. 97648, 2012-Ohio-4274, ¶ 93-94, ("The question we must answer under the first [] [prong] in *Johnson* is whether it is possible to commit aggravated burglary, aggravated robbery, and felony murder with the same conduct. We find that it is. If a defendant enters someone's home, without privilege to do so and another person is present, with the intent to steal property, and the defendant has a gun on his or her person, and brandishes or uses it, that conduct *could* also result in the commission of a felony murder if a person dies as a result of the defendant's conduct."). (Emphasis added.)

**{¶25}** Assuming then, for purposes of this analysis, that the crimes of aggravated burglary and aggravated murder could be committed with the same conduct to satisfy the first prong of *Johnson*, the evidence in the record still dictates that Mr. Owens committed these crimes with separate conduct and a separate animus. As stated above, Mr. Owens committed the crime of aggravated burglary when he entered C.W.'s apartment, attacked her at the front door, and continued struggling down the hallway. Mr. Owens committed the crime of aggravated murder by manually strangling C.W. to death after he finished raping her.

**{¶26}** Accordingly, pursuant to the second prong of *Johnson*, these crimes do not merge.

**{¶27}** Therefore, based upon the record before us, we cannot say that the trial court erred in finding that Mr. Owens' convictions for aggravated murder, aggravated burglary, and rape should not merge.

**{¶28}** Mr. Owens' assignment of error is overruled.

III.

**{¶29}** In overruling Mr. Owens' sole assignment of error, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT


HENSAL, J.
BELFANCE, J.
CONCUR.


APPEARANCES:

KIRK A. MIGDAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.