[Cite as *State v. Kirby*, 2014-Ohio-5643.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27060 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANTHONY KIRBY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2012-10-2846 |

DECISION AND JOURNAL ENTRY

Dated: December 23, 2014

BELFANCE, Presiding Judge.

{¶1} Defendant-Appellant Anthony Kirby appeals from his convictions and sentence by the Summit County Court of Common Pleas. For the reasons set forth below, we affirm in part, reverse in part, and vacate in part.

I.

{¶2} During the early morning hours of October 21, 2006, G.A. was walking South Arlington Street in Akron looking to solicit men to engage in sexual acts with her in exchange for money in order to support her drug habit. She encountered a man and asked if he wanted a "date." The two proceeded back behind the church on the corner of South Arlington and Concord, and she agreed to perform fellatio on him in exchange for $10.00. G.A. engaged in fellatio, but the man's penis never became erect and this seemed to make him angry.

{¶3} The man pulled out a box cutter, held it to G.A.'s neck, and told her that he wanted to have sex. G.A. became very frightened. The man told her to turn around, pull down

her pants, and lie on the ground. G.A. complied but begged the man not to hurt her. While G.A. was screaming for help, the man engaged in vaginal and then anal intercourse with G.A. G.A. then began fighting with the man – doing "everything [she] could do to get him off of [her]." Ultimately, the man ran off. After struggling with the man, G.A. felt pain on her left side. She found several cuts on her leg and buttocks. Despite her injuries, G.A. proceeded to go back to the drug house to get high. However, as her wounds continued to bleed, G.A. decided to go the emergency room. Some of the cuts required several stitches to close. DNA from the rectal swabs collected during G.A.'s examination was found to be consistent with Mr. Kirby's DNA.

{¶4} Mr. Kirby was indicted on one count of kidnapping in violation of R.C. 2905.01(A)(3), one count of kidnapping in violation of R.C. 2905.01(A)(4), two counts of rape in violation of R.C. 2907.02(A)(2), and one count of felonious assault in violation of R.C. 2903.11(A)(1). Subsequently, repeat violent offender specifications were added to counts three through five.

{¶5} The matter proceeded to a jury trial. The jury found Mr. Kirby guilty of all the counts. At a separate hearing, the trial court found Mr. Kirby guilty of the repeat violent offender specifications. At sentencing, the trial court merged the two kidnapping counts, and Mr. Kirby was sentenced on count two (the violation of R.C. 2905.01(A)(4). In total, Mr. Kirby was sentenced to 51 years in prison.

{¶6} Mr. Kirby has appealed, raising three assignments of error for our review. For ease of discussion, we will address the assignments of error out of sequence.

II.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ALLOWED
TESTIMONY OF PRIOR BAD ACTS EVIDENCE IN VIOLATION OF THE
DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S.
CONSTITUTION AND ARTICLE 1, SECTIONS 1, 10 & 16 OF THE OHIO
CONSTITUTION.

{¶7}   Mr. Kirby asserts in his first assignment of error that the trial court erred in admitting the testimony of M.D. and photographs of her injuries as it constituted impermissible other acts evidence.

{¶8}   We review a trial court's decision to admit other acts evidence for an abuse of discretion.  *See State v. Morris* 132 Ohio St.3d 337, 2012-Ohio-2407, syllabus.  Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  "'Evid.R. 404(B) is in accord with R.C. 2945.59 in that it precludes the admission of evidence of other crimes, wrongs, or acts offered to prove [propensity] * * *, but it does not preclude admission of that evidence for other purposes, e.g., to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'"  *State v. Ross,* 9th Dist. Summit No. 26694, 2014-Ohio-2867, ¶ 51, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 25.

{¶9}   Courts should conduct a three-step analysis in evaluating the admissibility of other acts evidence.

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401.  The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to

prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*Williams* at ¶ 20.

{¶10} The State sought to admit the testimony of M.D. after G.A. was unable at trial to identify Mr. Kirby as the man who raped and assaulted her. Mr. Kirby's counsel objected but the trial court allowed the testimony. The State argued that it believed the crimes demonstrated similar modus operandi and, thus, the testimony could be used as evidence of identity. *See Ross* at ¶ 59, quoting *State v. Lowe,* 69 Ohio St.3d 527, 531 (1994). ("'Other acts may [ ] prove identity by establishing a *modus operandi* applicable to the crime with which a defendant is charged.'") (Emphasis in original). M.D. testified that, in November 2006, she was living on Johnston near the end of Arlington in Akron, which she stated was approximately four houses away from the intersection of Concord and South Arlington. M.D. stated that, during the early morning hours of November 7, 2006, she was walking up Johnston when a man in a white pickup truck pulled up and she asked him for a ride. M.D. admitted to being on drugs at the time. The man took her to a church parking lot, "took the locks off the door and [] started to have sex with [her] and cut [her] neck with a box cutter." M.D. told him no, and he then offered her money. M.D. continued to try to open the door but was unable to. After the man finished, he threw M.D. out of the vehicle. M.D. identified Mr. Kirby as the man who assaulted her on November 7, 2006, both shortly after the assault occurred and at the instant trial. Additionally, at the instant trial, M.D. identified two photographs as being accurate depictions of the injury to her neck.

{¶11} Mr. Kirby first asserts that the testimony and photographs of M.D. were irrelevant because identity was not an issue in this case. Mr. Kirby maintains that, because the State presented evidence that DNA consistent with Mr. Kirby's DNA was found on a rectal swab taken from G.A. during her examination, the identity of the perpetrator of these crimes was not at issue and, thus, the other acts evidence should not have been admitted. Mr. Kirby alternatively argues that M.D.'s testimony was not admitted for a permissible purpose under Evid.R. 404(B).

{¶12} Upon review of the record, we cannot say that the identity of the perpetrator was not at issue. It is apparent that defense counsel's theory at trial was that, while Mr. Kirby may have had a consensual sexual encounter with G.A., he did not commit the crimes at issue. It was equally clear that, given G.A.'s admission that she was soliciting, defense counsel was insinuating that another one of G.A.'s clients committed the crimes instead. Assuming that theory was accepted by the jury, the DNA found inside G.A. would not assist in identifying G.A.'s attacker, leaving the issue of identity unresolved.

{¶13} Likewise, given that identity was an issue in this case, we do not find merit in Mr. Kirby's assertion that M.D.'s testimony was not admitted for a permissible purpose under Evid.R. 404(B). As noted above, proof of identity is a permissible purpose for the introduction of other acts evidence. We note that the trial court instructed the jury that the evidence was only to be considered for a limited purpose. The court stated that, if the jury found that the defendant committed the other crimes, the jury could consider that evidence "only for the purpose of deciding whether it proves one of the following: The absence of mistake or accident; that the defendant's motive, opportunity, intent or purpose, preparation or plan to commit the offense charged in this trial, or knowledge of circumstances surrounding the offense charged in this trial; or the identity of the person who committed the offense in this trial." Specifically, the trial court

cautioned that the jury was not to consider the evidence "to prove the character of the defendant in order to show that he acted in conformity with that character." *See Williams,* 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 23.

{¶14} Mr. Kirby also argues that the testimony of M.D. was not relevant to the issue of identity because of the existence of DNA evidence. However, as explained above, that argument lacks merit and Mr. Kirby has not developed any additional argument as to why M.D.'s testimony was not relevant. *See* App.R. 16(A)(7).

{¶15} Finally, in a rather conclusory manner, Mr. Kirby contends that the other acts evidence was inadmissible because its probative value was substantially outweighed by the danger of unfair prejudice. Mr. Kirby's argument is premised upon his assertion that M.D.'s testimony was not relevant because identity was not an issue at trial. While there is no doubt that the evidence was prejudicial to Mr. Kirby, he has not explained why the evidence's probative value was substantially outweighed by its possible prejudicial effect. *See* App.R. 16(A)(7). Again, we are mindful that the trial court gave a cautionary instruction detailing the limited use the jury was allowed to make of the testimony. *See Williams* at ¶ 24 ("This evidence is not unduly prejudicial, because the trial court instructed the jury that this evidence could not be considered to show that Williams had acted in conformity with a character trait."). Accordingly, we overrule Mr. Kirby's second assignment of error.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW IN IMPOSING CONSECUTIVE SENTENCES UPON KIRBY IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE 5TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTION[] 10 OF THE OHIO CONSTITUTION.

{¶16} Mr. Kirby asserts in his first assignment of error that the trial court erred in imposing certain consecutive sentences on him because several of the offenses were allied and should have merged for purposes of sentencing. Mr. Kirby has not challenged the trial court's compliance with R.C. 2929.14(C)(4), so that issue is not before us.

{¶17} We "apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination." *State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28. We remain mindful that it is a defendant's burden to demonstrate that he or she is entitled to have two offenses merge. *State v. Washington,* 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 18. "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 23.

{¶18} R.C. 2941.25 provides,

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶19} "Two or more offenses may result in multiple convictions if: (1) they are offenses of dissimilar import; (2) they are separately committed; or (3) the defendant possesses a separate animus as to each." *State v. Washington,* 9th Dist. Lorain No. 11CA010015, 2014-Ohio-1876, ¶ 9. "The first step of the analysis requires a court to consider the import of the offenses (i.e., whether they are of similar or dissimilar import)." *Id.* "The import analysis entails more than an

abstract review of the elements of the offenses involved. In undertaking the import analysis, the conduct of the accused must be considered." (Internal quotations and citations omitted.) *Id.* In doing so, the court should ask, "'whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other.'"[1] (Emphasis omitted.) *State v. Owens,* 9th Dist. No. 26837, 2014-Ohio-1394, ¶ 9, quoting *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 48.

{¶20} In the second step, the court evaluates "whether the offenses were committed separately or with a separate animus." *Washington,* 137 Ohio St.3d 427, 2013-Ohio-4982, at ¶ 16. Here, the court examines, "whether the offenses actually were committed by the same conduct, 'i.e., "a single act, committed with a single state of mind."'" *Owens* at ¶ 9, quoting *Johnson* at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., concurring). Therein, the court is charged with reviewing the entire record, including any argumentation and evidence presented at the time of sentencing. *Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, at ¶ 24.

{¶21} The trial court clearly considered the issue of merger at sentencing and rejected the majority of Mr. Kirby's argument. Nonetheless, it did conclude that the two kidnapping offenses should merge, and Mr. Kirby was sentenced only for one violation of R.C. 2905.01(A)(4). Mr. Kirby now asserts: (1) that the felonious assault and rape counts should merge; (2) the kidnapping and felonious assault counts should merge; and (3) the kidnapping and

---

[1] We note that the main opinion in *Johnson* was a plurality and since that time, while the Supreme Court has examined allied offenses on more than one occasion, it has alluded to a lack of consensus as to how courts should conduct the first step while taking the defendant's conduct into account. *See Washington,* 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 15 (noting that, "[b]eyond the syllabus * * * we were divided as to how to consider a defendant's conduct in the first prong's 'similar import' analysis[]").

rape counts should merge.[2]  Accordingly, we turn to evaluating the offenses to determine if the trial court erred in failing to merge the offenses for purposes of sentencing.

RAPE AND FELONIOUS ASSAULT

{¶22}  Mr. Kirby was found guilty of two counts of rape in violation of R.C. 2907.02(A)(2), one involving vaginal intercourse and the other anal intercourse, and one count of felonious assault in violation of R.C. 2903.11(A)(1).  R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."  R.C. 2903.11(A)(1) states that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *[.]"

{¶23}  Given Mr. Kirby's conduct as described in the record, we cannot say that the trial court erred in failing to merge the rape and felonious assault counts.  The conduct that constituted the rapes was not the same conduct that constituted the felonious assault.  The record is clear that the rape charges involved vaginal and anal intercourse and the felonious assault charge was based on Mr. Kirby stabbing G.A. multiple times with a box cutter.  *See State v. Wesson,* 137 Ohio St.3d 309, 2013-Ohio-4575, ¶ 71 ("Wesson's allied offenses claim fails because the same conduct is not the basis of both convictions.  Wesson tampered with evidence when he removed the cup and the long gun from the Varhola home and concealed them in the bushes.  He committed other conduct supporting the aggravated robbery conviction when he stole Emil's wallet and Mary's jewelry.").  In other words, Mr. Kirby's acts of raping G.A. did

---

[2] It does not appear that Mr. Kirby contends that the two counts of rape should merge. *See State v. Daniels,* 9th Dist. Summit No. 26406, 2013-Ohio-358, ¶ 9-10.

not result in the felonious assault, his act of stabbing her with a box cutter did.  Thus, Mr. Kirby can be separately convicted for the rapes and the felonious assault.

RAPE AND KIDNAPPING

{¶24}  Mr. Kirby next asserts that the trial court erred in failing to merge the rape and remaining kidnapping counts.

{¶25}  Mr. Kirby was sentenced for violating R.C. 2905.01(A)(4), which states that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]"  R.C. 2907.02(A)(2) states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."  With respect to the first element of the allied offense inquiry, "implicit within every forcible rape * * * is a kidnapping."  *State v. Logan,* 60 Ohio St.2d 126, 130  (1979); *see also State v. Howard,* 9th Dist. Lorain No. 13CA010372, 2014-Ohio-3373, ¶ 64.  Thus, the two offenses are allied offenses of similar import.  The second part of the test, namely, whether the offenses were committed separately or with separate animus, can be a more challenging inquiry.  In *Logan,* the Supreme Court of Ohio determined that, in deciding whether kidnapping and another offense of similar kind are committed with a separate animus, courts should use the following guidelines:

> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
>
> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the

underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Logan* at syllabus; *see also Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699, at ¶ 23.

**{¶26}** In *Logan,* the victim, who was out walking, was accosted by the defendant at an entry to an alley. *Logan* at 126. After the victim refused to accept pills from the defendant, he held a knife to her throat, forced her into an alley, around a corner, and down a flight of stairs where he raped her at knifepoint and then released her. *Id.* at 127. The Supreme Court concluded that the defendant did not possess a separate animus to commit kidnapping. The Court noted that "[t]he detention was brief, the movement was slight, and the victim was released immediately following the commission of the rape." *Id.* at 135. Further, the Court also concluded that there was no substantial increase in the risk of harm to the victim via the limited asportation or mechanism of restraint. *Id.* With respect to an example of a situation involving a substantial increased risk of harm, the Court opined that a victim held for prolonged periods in a bank vault during a robbery would be "placed in substantial danger[]" and, thus, the perpetrator could be sentenced for both kidnapping and robbery under those circumstances. *Id.*

**{¶27}** In this case, G.A. testified that she encountered Mr. Kirby and asked him if he wanted a date. She voluntarily went behind the church building and agreed to perform fellatio for $10.00. Mr. Kirby paid $10.00, and G.A. performed fellatio. After five minutes, Mr. Kirby became frustrated, pulled out a box cutter, and restrained G.A. with the box cutter while raping her. Similar to *Logan*, Mr. Kirby's restraint of G.A. had no significance independent of the rape offenses and instead was incidental to the acts of rape. *See id.* at 135-136. Likewise, we cannot say that the record supports that a significant asportation independent of the rape took place. *See Logan* at syllabus. Instead, the record evidences that the crimes took place in a single location

with little to no movement.  Moreover, there is nothing in the record to suggest that the restraint was prolonged.  *See id.*

{¶28}  We also conclude that given the evidence in this case, Mr. Kirby's restraint of G.A. did not subject her to "a substantial increase in risk of harm *separate and apart* from that involved in the underlying crime" of rape.  (Emphasis added.)  *Logan, 60 Ohio St.2d* at syllabus. As explained in *Logan*, the substantial increase in risk of harm is one that is separate and apart from that involved in the underlying offense.  In this case, as in *Logan,* where the victim was held at knifepoint during the commission of the rape, Mr. Kirby's restraint of G.A. with a box cutter while committing the rape, while subjecting her to a risk of harm, did not subject her to a substantial risk of harm *separate and apart* from the rapes.[3]  *See id.* at 127, 135.  As the Supreme Court did not conclude that such conduct warranted separate sentences for rape and kidnapping, we cannot conclude that the conduct at issue here authorizes separate sentences.

{¶29}  Finally, we cannot conclude that the record supports that there was the commission of an additional act of kidnapping separately committed and completed prior to the rapes.  It is difficult to conclude that G.A.'s initial encounter wherein she solicited Mr. Kirby and willingly accompanied him behind the church for said purpose, and then engaged in the discussed act amounted to a separate kidnapping via deception. We note that G.A. testified that her initial encounter with Mr. Kirby was consensual.  Mr. Kirby's sexual assault only began after the two engaged in the solicited act.  Thus, the State is required to elect whether to sentence Mr.

---

[3] The fact that G.A. was injured during the attack with the box cutter does not alter our analysis. The *risk* inherent in restraining someone with a sharp object was the same in both *Logan* and this case; the fact that the victim in *Logan* did not sustain an injury does not make that situation any less risky than the situation in this case.

Kirby for kidnapping or for rape. *See State v. Austin,* 9th Dist. Summit No. 26385, 2013-Ohio-1159, ¶ 29.

KIDNAPPING AND FELONIOUS ASSAULT

{¶30} Mr. Kirby next asserts that the trial court erred in failing to merge his convictions for felonious assault and kidnapping.

{¶31} The statutes prohibiting kidnapping and felonious assault have been previously detailed above. The analysis previously quoted from *Logan* can also apply in determining whether acts of kidnapping merge with acts of felonious assault. *See Logan,* 60 Ohio St.2d at 130; *State v. Harmon,* 9th Dist. Summit No. 26502, 2013-Ohio-1769, ¶ 25 (applying *Logan* in determining whether kidnapping and felonious assault merged).

{¶32} For similar reasons to those stated above, we likewise conclude that Mr. Kirby could only be sentenced on either kidnapping or felonious assault as the detention of G.A. was incidental to the felonious assault, the asportation was insignificant, the detention was not prolonged, and the detention did not subject G.A. to any substantial increased risk of harm outside of the harm caused by the felonious assault itself. *See Logan* at syllabus. Accordingly, the State must elect the offense on which it wishes to have Mr. Kirby sentenced. *See Austin* at ¶ 29. Mr. Kirby's first assignment of error is sustained in part, and overruled in part.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT MODIFIED KIRBY'S SENTENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶33} Mr. Kirby asserts in his third assignment of error that the trial court erred by modifying his sentence after a notice of appeal was filed. We agree.

{¶34} The trial court's original sentencing entry was journalized on August 5, 2013, and Mr. Kirby filed his notice of appeal on September 4, 2013. On September 26, 2013, the trial court issued what it labeled as a nunc pro tunc entry.[4] That entry altered Mr. Kirby's sentence. The August 5, 2013 entry did not classify any of the prison terms as mandatory; however, the September 26, 2013 entry modified Mr. Kirby's sentence for count three to indicate that the prison term for that offense was mandatory.

{¶35} "An appeal is perfected upon the filing of a written notice of appeal. Once a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal." (Internal quotations and citations omitted.) *Washington,* 137 Ohio St.3d 427, 2013-Ohio-4982, at ¶ 9. "Moreover, a trial court lacks the authority to reconsider its own valid, final judgment in a criminal case, with two exceptions: (1) when a void sentence has been imposed and (2) when the judgment contains a clerical error." *State v. Miller,* 127 Ohio St.3d 407, 2010-Ohio-5705, ¶ 14. However, even if the trial court retained jurisdiction to enter a nunc pro tunc entry after the notice of appeal was filed,[5] "[a] court may not use a nunc pro tunc entry to impose a sanction that the court did not impose as part of the sentence." *Id.* at syllabus. "Although courts possess inherent authority to correct clerical errors in judgment entries so that the record speaks the truth, nunc pro tunc entries are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided." *Id.* at ¶ 15. In the instant matter, the State concedes, and the record reflects, that Mr. Kirby was never informed at sentencing that any

---

[4] Mr. Kirby moved to supplement the record with the nunc pro tunc entry, and this Court granted that motion.

[5] *See State v. Alford,* 2d Dist. Montgomery No. 24368, 2012-Ohio-3490, ¶ 12 (listing appellate courts that have concluded that a trial court lacks jurisdiction to issue a nunc pro tunc entry once a notice of appeal has been filed); *but see State v. Kilgore,* 10th Dist. Franklin No. 11AP-660, 2012-Ohio-1316, ¶ 5-12 (concluding the trial court retained jurisdiction to correct a clerical error after a notice of appeal had been filed relying on a Second District case).

portion of his prison sentence was mandatory. Given the foregoing, we vacate the trial court's September 26, 2013 entry. Mr. Kirby's third assignment of error is sustained.

## III.

**{¶36}** In light of the foregoing, we sustain Mr. Kirby's third assignment of error and a portion of his first assignment of error. Mr. Kirby's second assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and vacated in part. The matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
vacated in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

EVE V. BELFANCE
FOR THE COURT

MOORE, J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶37} I concur with the majority's resolution of the second assignment of error, as I agree that the trial court did not err by admitting M.D.'s testimony and photographs of her injuries. I would conclude, moreover, that in addition to proving identity, M.D.'s testimony was admissible pursuant to Evid.R. 404(B) to prove modus operandi and intent to rape G.A.

{¶38} In the case of the kidnappings and assaults on both M.D. and G.A., the incidents occurred in the early morning hours; Kirby picked up both women off the street and removed them to the premises of a church; he paid or offered to pay each for sexual acts; he threatened both with box cutters to compel them to engage in sexual activity; and he cut both women during sex. M.D.'s testimony was admissible to demonstrate Kirby's modus operandi, to wit, targeting lone women in the early hours of the morning who were likely to be easily deceived into accompanying Kirby to a more secluded location where he intended to sexually assault the women. Both women were easily manipulated due to the influence of drugs: M.D. was intoxicated when Kirby picked her up, while G.A. was driven by her need for drugs to prostitute herself. In both cases, Kirby attempted to pay for sexual activity as subterfuge, intending instead to terrorize the women with a box cutter before compelling them to submit to sexual intercourse during which he in fact inflicted cuts on their bodies. M.D.'s testimony demonstrated that Kirby used the same modus operandi of targeting women whom he likely suspected to be drug-dependent prostitutes and whom he could easily lure to a more secluded location with the intent of terrorizing, raping, and cutting them. Accordingly, I agree that the trial court properly

admitted M.D.'s testimony and photographs of her injuries pursuant to Evid.R. 404(B) for purposes of proving identity, modus operandi, and intent.

{¶39} I respectfully dissent from portions of the majority's resolution of the first assignment of error. While I agree that the trial court did not err in declining to merge the offenses of rape and felonious assault, I disagree with the conclusions that the rape and kidnapping counts and the felonious assault and kidnapping counts are allied offenses of similar import that must merge in this case. As in all cases in consideration of merger, "[t]he defendant bears the burden of establishing his entitlement to the protection, provided by R.C. 2941.25, against multiple punishments for a single criminal act." *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 18. I do not believe that he has done so in this case.

{¶40} Kirby was convicted of kidnapping in violation of both R.C. 2905.01(A)(3) and (A)(4) which state: "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o terrorize, or to inflict serious physical harm on the victim * * *, [or] [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]" The trial court merged the two kidnapping counts, and the State implicitly elected that Kirby be sentenced under subsection (A)(4). Kirby was further convicted of two counts of rape in violation of R.C. 2907.02(A)(2) which states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶41} I recognize that it is possible to commit rape and kidnapping by the same conduct. A perpetrator necessarily restrains the victim's liberty while compelling the victim to submit to sexual conduct. *See State v. Logan*, 60 Ohio St.2d 126, 130 (1979) ("[I]mplicit within every

forcible rape is a kidnapping.") Therefore, the crucial inquiry in this case is whether Kirby committed kidnapping and rape separately or with a separate animus so that the two offenses would not merge. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 51.

**{¶42}** The Ohio Supreme Court has offered the following guidance:

In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:

(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Logan*, 60 Ohio St.2d at syllabus.

**{¶43}** The evidence established that Kirby solicited G.A. for oral sex in exchange for money, leading her off the open street to a more secluded area behind a church. Kirby did not attain an erection during fellatio. Instead, he did not become aroused until he threatened G.A. with the box cutter. Once the victim showed fear, Kirby achieved an erection and subsequently raped her both vaginally and anally.

**{¶44}** Under these circumstances, I would conclude that Kirby's kidnapping of the victim was not merely incidental to his restraining her during sexual activity. Instead, I would conclude that his conduct demonstrated that he kidnapped G.A. the moment he directed her off the street to a more secluded area behind the church, deceiving her into believing that he was merely a customer willing to exchange $10 for oral sex. That G.A. willingly accompanied Kirby behind the church only militates against merger, emphasizing his deceit and removal to a place

where they were not likely to be seen. Reasonably, a person intending to prostitute herself on the street would remain in a visible area until she obtained a client, then retreating to an obscure location to perform the transaction. Kirby's posing as a client effected this ruse.

{¶45} Kirby did not initiate his sexual assault of the victim immediately upon reaching the area out of sight from the street. Instead, he continued with the ruse, allowing G.A. to perform fellatio on him, prolonging her removal from the visibility of the street. Only after he terminated the consensual sexual conduct with the victim and instilled fear in her by threatening her with a box cutter did Kirby initiate his sexual assault. I would conclude that the separate kidnapping was complete at the time Kirby deceived the victim and removed her to a secluded area behind the church to engage in sexual activity. After he completed that act, he then compelled G.A. to submit to further sexual activity by threat of force. Accordingly, I would conclude that he committed the offenses of kidnapping and rape each with a separate animus.

{¶46} Kirby was further convicted of felonious assault in violation of R.C. 2903.11(A)(1) which states that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *."

{¶47} While Kirby cut G.A. multiple times with the box cutter, he did not do so to compel her to submit to the sexual assault. He merely threatened to cut her, and she submitted. It was only after Kirby had raped her twice that the victim realized that her assailant had cut her buttocks and thighs with the box cutter as he raped her from behind. Because he was already wielding control over the victim as he raped her, there was no need to cut her to restrain her movement. Accordingly, the infliction of serious physical harm with the box cutter appeared to be gratuitous, done solely for its own sake. Moreover, as discussed above, the kidnapping was complete upon Kirby's removing the victim to another location after deceiving her about his

intentions. Under these circumstances, I would conclude that Kirby committed kidnapping and felonious assault separately, each with a separate animus. Accordingly, I would overrule Kirby's first assignment of error in its totality.

{¶48} I further dissent from the majority's resolution of the third assignment of error.

{¶49} The majority correctly states that "a trial court lacks the authority to reconsider its own valid, final judgment in a criminal case, with two exceptions: (1) when a void sentence has been imposed and (2) when the judgment contains a clerical error." *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, ¶ 14. It then only analyzed whether or not the sentencing entry might have been reissued to correct a clerical error. Noting that the trial court failed to inform Kirby that his sentence for rape was mandatory, the majority concludes that the nunc pro tunc sentencing entry could not have been reissued to reflect what the trial court actually decided and was, therefore, not a proper nunc pro tunc entry. I believe that this approach does not fully address the issue at hand.

{¶50} The trial court in this case failed to impose a mandatory portion of Kirby's sentence for rape. The Ohio Supreme Court recently addressed similar situations. In *State v. Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, ¶ 18, the high court held that "when a trial court fails to include a mandatory driver's license suspension as part of an offender's sentence, that part of the sentence is void." The *Harris* court extended the reasoning in *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, which addressed the trial court's failure to impose the statutorily mandated period of postrelease control and concluded that such a failure renders that limited portion of the sentence void. *Harris* at ¶ 16-18. It found this logic "controlling when it comes to other statutorily mandatory terms." *Id.* at ¶ 16. Later the same year, the Supreme Court applied this same logic with regard to a trial court's failure to impose a mandatory fine,

concluding that that part of the sentence was void. *State v. Moore*, 135 Ohio St.3d 151, 2012-Ohio-5479, syllabus and ¶ 15-16.

**{¶51}** In cases where part of the sentence is void, resentencing is limited to the imposition of the statutorily mandated term. *Harris* at ¶ 18; *Moore* at ¶ syllabus. In this case, the trial court did not modify any other aspects of the sentencing entry save for imposition of the statutorily mandated term for rape as that portion of the sentence was void. Pursuant to *Miller* at ¶ 14, it had the authority to reconsider that portion of the sentence.

**{¶52}** A nunc pro tunc order is not the appropriate mechanism to supply omitted terms that the trial court should have included in the first instance. *State v. Yeagley*, 9th Dist. Wayne No. 2895, 1995 WL 231200, *3 (Apr. 19, 1995), citing *State v. Greulich*, 61 Ohio App.3d 22, 24-25 (9th Dist.1988). However, as we concluded in *Yeagley* at *4:

> Inasmuch as the trial court's original sentencing order was null and void [in part], a nunc pro tunc order was not the proper vehicle to correct it. Since the trial court retained jurisdiction to correct the void [portion of the] sentencing entry, however, the use of a nunc pro tunc order was harmless error.

Accordingly, I would overrule Kirby's third assignment of error.

**{¶53}** I emphasize here that I do not address the propriety of the trial court's resentencing of Kirby in his apparent absence. That issue is not before this Court at this time, as he has not appealed from the September 26, 2013 sentencing entry.

APPEARANCES:

DIANE L. DOUGHERTY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.