OPINION
{¶ 1} This appeal arises from the Painesville Municipal Court wherein, appellant, Charles Donaldson, ("Donaldson"), was convicted of one count of failure to aid a law enforcement officer, a minor misdemeanor.
 {¶ 2} On January 2, 2002, Deputies Pruter and Buchs of the Lake County Sheriff's Department, responded to a domestic violence call. Donaldson's daughter had been in a physical altercation with her brother, Donaldson's son, Bobby. The daughter had left the home and went next door to the fire station to call the police, as there was no telephone in the home. The deputies arrived at the fire station shortly after the call. The daughter showed signs of physical injury. The deputies and Donaldson's daughter then went next door to Donaldson's home to investigate further and look for Bobby. Bobby was not in the home when they arrived. Both deputies went outside to look for him.
 {¶ 3} Deputy Pruter returned to the home a short time later to get a statement from the daughter and determine whether she wished to press charges against her brother. Upon entering the house, Pruter noted that Bobby was present. Pruter then called for Deputy Buchs to return to the home. Donaldson, his wife, and two small children were also present in the home at that time.
 {¶ 4} Pruter testified that he stood in the kitchen near Bobby. He recognized Bobby from past incidents and said, "[h]ello, Bobby. Take it easy. We've been through this before." To which Bobby responded, "[f]____k you, pig. It's always my fault." Pruter further testified that Bobby stood with his hands in his pockets and refused to remove them in order to be handcuffed and arrested.
 {¶ 5} Pruter reached for his handcuff case to remove his handcuffs. Bobby then charged at Pruter and attempted to grab his gun from the holster, while pushing Pruter backward into a bedpost in the adjoining bedroom. Pruter broke the bedpost on contact, and the two fell onto the bed, which was covered with picture frames and glass from the previous altercation between Bobby and his sister. Pruter fell on to the glass with Bobby on top of him. Pruter could feel his holster being unsnapped, so he placed his hand on his gun to secure his weapon as Bobby was attempting to remove it. Deputy Buchs then attempted to pull Bobby off of Pruter. The three continued to wrestle. They rolled off the end of the bed and onto the floor. It was then that Pruter noticed that he had a great deal of blood on his left hand and had lost all sensation in his left hand and wrist. While Deputy Buchs continued to try to restrain Bobby, Pruter knelt on the floor and attempted to find his radio to call for help. He looked up to Donaldson and yelled, "[g]ive me a hand Help us. Just f____king help us!" Pruter testified that Donaldson just stared at him and refused to move. Donaldson's wife was screaming at Bobby and telling him to stop.
 {¶ 6} After some time, Deputy Buchs was able to restrain Bobby in order to put the handcuffs on him and then radio for assistance. Deputy Pruter sustained a deep laceration to his middle finger and was taken to the hospital for treatment. The tendon was severed, and he lost the use of that finger for several weeks.
 {¶ 7} Donaldson was cited for failure to aid a police officer. He pled not guilty on January 16, 2002. The matter was set for a bench trial on March 5, 2002. He was found guilty and was charged a fine of $100.
 {¶ 8} Donaldson subsequently filed this appeal, citing two assignments of error.
 {¶ 9} The first assignment of error is:
 {¶ 10} "The trial court erred to the prejudice of the appellant by finding that the defendant was guilty, said finding being based on insufficient evidence."
 {¶ 11} In his first assignment of error, Donaldson argues that the prosecution failed to present any evidence in support of one of the elements of the offense of failure to aid a police officer. Specifically, the prosecution failed to present any evidence that assisting the officer would not place Donaldson in any risk of physical harm.
 {¶ 12} In order to prevail, the prosecution must prove all of the elements of the offense beyond a reasonable doubt.[1]
 {¶ 13} R.C. 2921.23, failure to aid a law enforcement officer, reads:
 {¶ 14} "(A) No person shall negligently fail or refuse to aid a law enforcement officer, when called upon for assistance in preventing or halting the commission of an offense, or in apprehending or detaining an offender, when such aid can be given without a substantial risk of physical harm to the person giving it."
 {¶ 15} "Substantial risk" is defined as, "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."[2]
 {¶ 16} A careful reading of the statutory language reveals that, in order to prevail, the prosecution had to provide sufficient evidence that there was not a substantial risk of physical harm to Donaldson in assisting Deputies Pruter and Buchs. A review of the transcript reveals that both Deputy Pruter and Deputy Buchs testified regarding the incident. Deputy Buchs gave a detailed account of the incident from his perspective, including the altercation involving himself, Bobby, and Deputy Pruter. He noted Donaldson's lack of response after several requests for assistance. Deputy Pruter's subsequent testimony corroborated that of Deputy Buchs. Deputy Pruter also testified regarding the nature and extent of his injuries, as well as his direct requests for assistance to Donaldson, who refused to respond:
 {¶ 17} "Deputy Pruter: [After all three rolled off the bed], we flipped at the same time he had his hand on the gun. Like I said, we did a roll-off onto the floor and [Deputy Buchs] was on the bottom, had [Bobby] in a headlock and [Bobby] was on him.
 {¶ 18} "And I sat up looking for my radio to call for help. And by that time, I completely lost my left hand, completely lost feeling in my left hand
 {¶ 19} "Prosecutor: Well, when did you begin asking Charles Donaldson for help?
 {¶ 20} "Deputy Pruter: After we flipped off the bed . . . I said `Give me a hand Help us. Just f____kin' help us. Help us. Help us.
 {¶ 21} "Prosecutor: And where was [Donaldson] in relation to you?
 {¶ 22} "Deputy Pruter: I was looking up at him.
 {¶ 23} "Prosecutor: And how far away was he?
 {¶ 24} "Deputy Pruter: I was kneeling at the time, because I was looking for my radio and my magazines.
 {¶ 25} "Prosecutor: Did he come to your aid?
 {¶ 26} "Deputy Pruter: No, he stared at us.
 {¶ 27} "Prosecutor: — in any way?
 {¶ 28} "Deputy Pruter: He — he stared at — he just watched. The mother was trying to do what she could. If she would have got involved, she would have been hurt."
 {¶ 29} Turning to the presence of a substantial risk of physical harm, R.C. 2921.23 does not require an individual to assist a law enforcement officer when there may be a substantial risk of physical harm to that individual in doing so. Thus, the prosecution must demonstrate that only a remote risk of physical harm existed.
 {¶ 30} In the instant case, it is clear from the record that both deputies were attempting to get the situation under control. However, once Deputy Pruter lost the use of his left hand he became seriously impaired and was unable to restrain Bobby. There was also testimony that Bobby was attempting to grab Deputy Pruter's gun and had been unable to unsnap the holster. The presence of the gun and broken glass greatly heightened the risk of physical harm to all individuals involved. Moreover, Deputy Pruter's testimony that Donaldson's wife "would have been hurt" had she gotten involved further emphasizes the elevated risk of physical harm that was present. In addition, the seriousness of Officer Pruter's injuries demonstrates the level of risk involved.
 {¶ 31} Based on the foregoing evidence, we conclude that the prosecution failed to demonstrate that only a remote risk of physical harm existed. The record reveals that a strong possibility of physical harm existed. Thus, Donaldson was under no duty to assist the law enforcement officers in this case.
 {¶ 32} Donaldson's first assignment of error is with merit.
 {¶ 33} The second assignment of error is:
 {¶ 34} "The trial court erred to the prejudice of the appellant by not granting defendant's motion for dismissal made at the close of the prosecution's case."
 {¶ 35} In his second assignment of error, Donaldson argues, as above, that the prosecution failed to present evidence of each of the elements and, therefore, failed to establish a "prima facie" case necessitating the granting of his motion for acquittal.
 {¶ 36} The Supreme Court of Ohio has noted that a motion for acquittal pursuant to Crim.R. 29 shall not be granted "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[3]
 {¶ 37} As noted above, the prosecution failed to provide sufficient evidence of each element of the offense. Based on the trial testimony, we find that reasonable minds could not have reached different conclusions as to whether each element of the crime was proven beyond a reasonable doubt. Thus, the trial court erred in denying Donaldson's motion for acquittal.
 {¶ 38} Donaldson also argues that a material element of the crime was omitted from the complaint and, as Donaldson objected to the omission prior to the matter being presented to the trier of fact, that complaint may not form the basis of a conviction. Donaldson contends that the complaint issued to him stated only that he failed to aid a police officer and did not include the essential element that he could have done so without substantial risk of harm.
 {¶ 39} The complaint referred to by Donaldson is the citation issued to him at his home on the day of the incident. The offense of failure to aid a law enforcement officer is a minor misdemeanor, carrying a maximum penalty of a $100 fine.[4] A law enforcement officer may issue a citation for a minor misdemeanor.[5] The citation must "contain the name and address of the defendant; describe the offense charged; give the numerical designation of the applicable statute or ordinance; state the name of the law enforcement officer who issued the citation; and order the defendant to appear at a stated time and place" or inform the offender of the right to waive the appearance, plead guilty, and pay the penalty.[6] A review of the record and the citation enclosed therein, reveals that the citation issued to Donaldson on the date of the offense met with each of the requirements of Crim.R. 4.1(C) for issuing a citation for a minor misdemeanor.
 {¶ 40} However, as the prosecution failed to provide sufficient evidence on every element of the offense, the trial court erred in failing to grant Donaldson's Crim.R. 29 motion for acquittal. Donaldson's second assignment of error is with merit.
 {¶ 41} Based on the foregoing, the judgment of the trial court is reversed, and judgment is entered for Donaldson.
Donald R. Ford, P.J., Cynthia Westcott Rice, J., concur.
[1] See R.C 2901.05(A); In re Winship (1970), 397 U.S. 358.
[2] R.C. 2901.01(A)(8).
[3] State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus.
[4] See R.C. 2921.23(B) and 2929.21(D).
[5] Crim.R. 4.1(C).
[6] Id.