[Cite as *State v. Gordon*, 2017-Ohio-7147.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

    Appellee

v.

ABDUL-KHALIQ J. GORDON

    Appellant

C.A. No.    28331

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2015 12 3996 (A)

DECISION AND JOURNAL ENTRY

Dated: August 9, 2017

TEODOSIO, Judge.

{¶1}    Appellant, Abdul-Khaliq J. Gordon, appeals from his convictions in the Summit County Court of Common Pleas. We affirm.

I.

{¶2}    A rash of break-ins and thefts troubled several local businesses beginning in November of 2015. Property was vandalized and destroyed while scrap metal and a Mazda3 sedan were stolen. Some of the scrap metal was identified at a local scrap yard as being sold by a man who had used the identification of Mr. Uzodinma Onuora and had driven the stolen Mazda3. On Christmas Day of 2015, a police officer recognized the stolen Mazda3 in a parking lot and arrested Mr. Gordon as the sole occupant of the vehicle. He was indicted on charges of receiving stolen property and possession of marijuana.

{¶3}    More break-ins at businesses occurred in March and April of 2016, where property was damaged and scrap metal was stolen. Some of the more unique pieces of stolen

scrap metal were identified at a local scrap yard and had been sold there by Mr. Ronald Roatsey. Mr. Roatsey told police that he had been paid by a man named "L" to sell scrap metal there for him on several occasions. The police tracked "L" to his girlfriend's apartment complex and knocked on the door, but no one answered. Mr. Gordon peeked out the back door, but slammed it shut once he saw an officer outside. He attempted to hide in another resident's apartment, but the resident soon led police inside to find Mr. Gordon. As he attempted to escape through a window, Mr. Gordon struggled with an officer and the window glass shattered. He was handcuffed and arrested. The police found Mr. Gordon's identification in his wallet and a detective recognized the name as that of the individual charged in the stolen Mazda3 case.

{¶4} A supplemental indictment was filed and, following a jury trial, Mr. Gordon was found guilty of receiving stolen property, to wit: the Mazda3, obstructing official business, identity fraud, and two counts of receiving stolen property, to wit: special purchase articles. The jury found him not guilty of nine other charges. The possession of marijuana charge was tried to the court and Mr. Gordon was found guilty of that offense. He was sentenced to a total of fifty-nine months in prison. No fine was imposed for possession of marijuana.

{¶5} Mr. Gordon now appeals from his convictions and raises four assignments of error for this Court's review.

## II.

### ASSIGNMENT OF ERROR ONE

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND MR. GORDON GUILTY BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT SUCH FINDINGS.

**{¶6}** In his first assignment of error, Mr. Gordon argues that the trial court erred in denying his Crim.R. 29 motion because his convictions were based on insufficient evidence. We disagree.

**{¶7}** "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. But, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

Receiving Stolen Property

**{¶8}** Mr. Gordon was convicted of three counts of receiving stolen property under R.C. 2913.51(A), which states "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." If the stolen property is a motor vehicle, the offense is a felony of the fourth degree. R.C. 2913.51(C). If the stolen property is a special purchase article, e.g., scrap metal, the offense is a felony of the fifth degree. R.C. 2913.51(D). "A person acts

knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶9} The State presented evidence, if believed, that Mr. Gordon received or retained the Mazda3 either knowing or having reasonable cause to believe it was stolen. The owner of American Glass & Construction testified that, over the long Thanksgiving weekend in 2015, someone broke into his warehouse, vandalized it, and stole scrap metal and his Mazda3 along with its keys. The vehicle's license plate number was GMC-6455.

{¶10} The owner of United Salvage testified that a man using the identification of Mr. Uzodinma Onuora had been selling scrap metal to the business since May of 2015 and never arrived in a vehicle until December 23, 2015. On that day, the man arrived in a Mazda3 to sell scrap metal. An employee took down the vehicle's license plate number of GMC-6455. The employee picked Mr. Gordon out of a photo array in April of 2016 and was 100% sure that Mr. Gordon was the man driving the Mazda3 on December 23rd. The employee also identified Mr. Gordon in court.

{¶11} Akron police officer David Zelenka reviews stolen vehicle lists daily and testified that he was on patrol on Christmas Day of 2015 when he saw the stolen Mazda3 parked in a CVS parking lot. The officer positioned himself behind the vehicle and ordered the sole occupant, Mr. Gordon, out of the vehicle at gunpoint. As Mr. Gordon slowly went to the ground, the officer saw Mr. Gordon throw something, later determined to be the stolen vehicle's keys, under a car parked next to the Mazda3.

{¶12} Mr. Gordon told the officer that a few days ago at a nearby Rally's he paid a younger, black male nicknamed Boogie $250.00 to rent the car for a couple of weeks. He stated that he did not know Boogie's real name or address, but Boogie was in his 20's, slim, with short hair, no facial hair, and no tattoos. He said Boogie could be found on Hazel Street, which Officer Zelenka testified is a long street that "runs pretty far." Mr. Gordon said he did not have any way to contact Boogie, but told the officer that there was an understanding that they would "[run] into each other." Officer Zelenka testified that while talking to Mr. Gordon, "I got the general sense that he wasn't going to give me specifics." The actual owner of the vehicle testified that he had never met Mr. Gordon before and that neither Mr. Gordon nor anyone else had permission to use his vehicle.

{¶13} Mr. Gordon argues that the State introduced no evidence indicating that he knew or should have known the Mazda3 was stolen. However, "[p]ossession of recently stolen property, if not *satisfactorily* explained, is ordinarily a circumstance from which a jury may reasonably infer and find, in the light of the surrounding circumstances shown by the case, that the person in possession knew that the property had been stolen." (Emphasis added.) *State v. Warren*, 9th Dist. Summit No. 16034, 1993 WL 175518, *4 (May 26, 1993). We conclude that a jury could have reasonably found that Mr. Gordon either knew or had reasonable cause to believe that the car was stolen given his explanation of how he obtained possession of the car. *See State v. White*, 12th Dist. Butler No. CA2002-07-161, 2003-Ohio-2011, ¶ 13-15 (affirming appellant's conviction for receiving stolen property where he claimed he did not know the car was stolen and had rented it for $20.00 from a man in the neighborhood nicknamed "Slick").

{¶14} The State also presented evidence, if believed, that Mr. Gordon received, retained, or disposed of scrap metal belonging to World Metal. The owner of World Metal testified that

over $100,000.00 in damage was done and scrap metal was stolen from his business during many break-ins throughout March and April of 2016. One morning, the owner interrupted the thief, but he ran and hid before the owner or police could find him. The owner found tools, equipment, and scrap metal stashed by the thief, which someone secretly retrieved later.

{¶15} The owner also had two other encounters with an individual or individuals on World Metal's property. He saw a person wearing a brown hoodie pulled tight around his head walking inside of a fenced storage area and confronted him. The man said he was "just cutting through[,]" jumped a fence, and ran away. An hour or so later, the owner saw either the same individual or another individual walking on the sidewalk and studying the fence line. The man stopped by an area of the chain link fence that had been cut beforehand and reached down to pick up a bag of scrap metal that had been stashed there. When confronted by the owner, the man fled. The owner tried but was unable to identify the man in the brown hoodie in three separate photo arrays. However, he testified that when Mr. Gordon walked by him in the courthouse that morning, he immediately recognized him as the second individual who tried to retrieve the bag of stolen scrap metal that was stashed by the cut fence.

{¶16} Mr. Gordon argues that at no time was he identified as possessing any stolen scrap metal or selling it to PSC Metals. However, the State did not proceed at trial on a theory that Mr. Gordon sold scrap metal directly to PSC Metals. The State proceeded on the theory that Mr. Gordon paid Mr. Ronald Roatsey to sell stolen scrap metal to PSC Metals for him on multiple occasions. "The identity of a perpetrator must be proved by the State beyond a reasonable doubt." *State v. Jackson*, 9th Dist. Summit No. 28192, 2017-Ohio-635, ¶ 7. "[I]dentity may be established through direct or circumstantial evidence." *Id.*

{¶17} Mr. Roatsey identified Mr. Gordon in court and testified that he met Mr. Gordon on March 30, 2016. Mr. Gordon identified himself as "L" and asked Mr. Roatsey if he had an ID and would like to make $10-$15. Mr. Gordon had a city trash can full of scrap metal and asked Mr. Roatsey to turn it in for him at a scrap yard. Mr. Roatsey testified that he and Mr. Gordon went to PSC Metals together and Mr. Roatsey sold Mr. Gordon's scrap metal for him. He sold more scrap metal for Mr. Gordon on multiple occasions thereafter for $10-$15 each time and Mr. Gordon sometimes accompanied him to the scrap yard. Mr. Roatsey identified Mr. Gordon in two surveillance pictures taken at PSC Metals as the man standing near him wearing a gray hoodie with red and black stripes on both March 30, 2016, and April 1, 2016. The owner of World Metal was able to identify unique copper bars that were stolen from transformers at World Metal and sold to PSC Metals by Mr. Roatsey. We conclude that a jury could have reasonably found that Mr. Gordon possessed stolen scrap metal and paid Mr. Roatsey to sell his stolen scrap metal to PSC Metals.

Obstructing Official Business

{¶18} Mr. Gordon was convicted of obstructing official business under R.C. 2921.31(A), which states "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." "If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree." R.C. 2921.31(B). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature,

regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶19} The State presented evidence, if believed, that Mr. Gordon purposely prevented, obstructed, or delayed the police officers' investigation by attempting to flee from them, which hampered or impeded their duties and created a risk of physical harm to people in the area. After talking to Mr. Roatsey, police officers tracked "L" to a nearby Burger King. Officer Douglas Matson testified that officers reviewed surveillance video at the restaurant, obtained a picture of "L," and learned that the suspect's girlfriend lived in an apartment complex on East Buchtel Avenue.

{¶20} Detective Bassett testified that he knocked on the apartment door and identified himself. Detective Bassett, Detective Welser, and Officer Bodnar all testified that they heard movement inside and could see shadows of movement in the large gap underneath the door. While they knocked on the front door, Officer Matson went around to the back of the apartment complex. He testified that Mr. Gordon peeked out the back door and looked around. The officer recognized Mr. Gordon as "L" from the Burger King surveillance video. Mr. Gordon was wearing the same coat that "L" wore in the Burger King surveillance video, which Officer Mason described as "darker * * * [with] red -- I don't want to say pin-striping, but it kind of reminds me of Spider[-]man. It wasn't real blatantly clear until you got up close to it and see exactly the design." Once Mr. Gordon saw the officer, he slammed the door shut and went back inside.

{¶21} The resident of another apartment in the building testified that Mr. Gordon knocked on his door in a panic and said, "Help me. Hide me." The moment the resident opened his door, Mr. Gordon quickly brushed by him into the apartment without permission. Officer

Matson testified that the resident came outside and told him that the guy they were looking for just knocked on his door. He told police, "I opened the door. He just rushed right past me and into my apartment. He's in there. Can you go get him? I don't want him in my apartment." Officer Matson testified that running into someone else's private apartment puts people at risk of bodily harm. He further testified that he had a little bit of hesitation going into the apartment after Mr. Gordon because he didn't know what was going on inside or if someone was possibly armed and going to ambush him.

{¶22} Officer Matson entered the resident's apartment and intercepted Mr. Gordon as he tried to flee through a bedroom window. The officer testified that he "yelled for him to come back in, get back in" and Mr. Gordon did not comply. "The affirmative act of running from an officer impedes or hinders the performance of an officer's lawful duty." *State v. Sanders*, 9th Dist. Summit No. 23504, 2007-Ohio-2898, ¶ 21. The window glass shattered during a brief struggle between the two men before the officer arrested Mr. Gordon and handcuffed him. An attempt to flee that leads to a brief scuffle or wrestling with police is sufficient to hamper or impede the officer's performance of his lawful duties. *See State v. Vactor*, 9th Dist. Lorain No. 02CA008068, 2003-Ohio-7195, ¶ 38. Moreover, a risk of physical harm can exist when an officer attempts to restrain a suspect. *See id.* at ¶ 39. The presence of broken glass can also heighten the risk of physical harm. *See State v. Donaldson*, 11th Dist. Lake No. 2002-L-061, 2003-Ohio-6683, ¶ 30.

{¶23} Several officers testified that during Mr. Gordon's attempted escape through the window, they heard the window glass shatter. Officer Matson testified that the window glass shattered during his struggle with Mr. Gordon. Mr. Gordon argues that there is no evidence that he intended to shatter the window glass or that anyone was harmed or put in harm's way because

of the broken glass. However, whether the broken window was intended or accidental during his attempted flight is inconsequential, as is whether anyone actually suffered physical harm. The State was only required to present evidence that Mr. Gordon's actions created a *risk* of physical harm to any person. *See State v. Washington*, 9th Dist. Lorain No. 11CA010015, 2014-Ohio-1876, ¶ 18. "[T]he potential risk of injury to an officer in pursuit of a suspect need not be a large one in order to support a conviction for obstruction of official business." *State v. Woodson*, 9th Dist. Wayne No. 07CA0044, 2008-Ohio-1469, ¶ 27. Nonetheless, Detective Bassett testified that Mr. Gordon actually did sustain a cut or abrasion on him, presumably from the broken window, and a picture of the injury was introduced as evidence.

**{¶24}** We conclude that a jury could have reasonably found that Mr. Gordon obstructed official business in attempting to flee from the police and that his actions created a risk of physical harm to himself, the police, and others.

<u>Identity Fraud</u>

**{¶25}** Mr. Gordon was convicted of identity fraud under R.C. 2913.49(B), which states:

> No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to [either] [h]old the person out to be the other person [or] [r]epresent the other person's personal identifying information as the person's own personal identifying information.

**{¶26}** The State presented evidence, if believed, that Mr. Gordon used Mr. Uzodinma Onuora's identification to sell scrap metal at United Salvage. The owner of United Salvage testified that the owner of Eckard Baldwin funeral home identified some scrap metal at United Salvage in December of 2015 as property that had been stolen from the funeral home. United Salvage's records showed that an individual using the identification of Mr. Onuora had sold the stolen scrap metal to United Salvage and had been selling scrap metal there using Mr. Onuora's

identification since May of 2015. On December 23, 2015, the man using Mr. Onuora's ID showed up to sell scrap metal in a Mazda3 with the license plate number GMC-6455. The employee identified Mr. Gordon in a photo array in April of 2016 and was 100% sure that Mr. Gordon was the man driving the Mazda3 on December 23rd. He also identified Mr. Gordon in court. Mr. Gordon was arrested by police two days later as the sole occupant of the Mazda3 and told police he had rented it a few days ago. Detective Bassett testified that initial charges against Mr. Onuora were soon dropped because police determined that Mr. Onuora was not in Ohio in December of 2015. We conclude that a jury could have reasonably found that Mr. Gordon used Mr. Onuora's identification to sell scrap metal.

{¶27} Altogether, after reviewing the evidence contained in the record in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production and presented sufficient evidence for the case to go to the jury. Furthermore, any rational trier of fact could have found all of the essential elements of the above offenses proven beyond a reasonable doubt.

{¶28} Mr. Gordon's first assignment of error is overruled.

### ASSIGNMENT OF ERROR TWO

MR. GORDON'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE.

{¶29} In his second assignment of error, Mr. Gordon argues that his convictions are against the manifest weight of the evidence. We disagree.

{¶30} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. "This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction." *State v. Hamilton*, 9th Dist. Lorain No. 15CA010830, 2017-Ohio-230, ¶ 20.

{¶31} Mr. Gordon argues that the jury clearly lost its way and the State did not meet its burden of persuasion because there was no evidence that he created a risk of physical harm to anyone when the window glass shattered and no one stated that he had used or attempted to use another person's identification as his own. However, these arguments are essentially sufficiency of the evidence arguments. "A weight challenge tests the persuasiveness of the evidence the State produced while a sufficiency challenge tests the very production of that evidence." *State v. Hayes*, 9th Dist. Summit No. 26388, 2013-Ohio-2429, ¶ 9. "An argument that the State failed to prove one of the elements of a crime is one sounding in sufficiency, not weight." *Id.* "[S]ufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. Mr. Gordon has not challenged the evidence set forth by the State as "unreliable or lacking credibility." *See State v. Smith*, 9th Dist. Summit No. 27877, 2016-Ohio-7278, ¶ 16. This Court will not develop a manifest weight argument on his behalf. *See State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32. We have already determined above that his convictions are based on sufficient evidence.

{¶32} Mr. Gordon also argues that the jury clearly lost its way because he gave the name and a description of the person who had given him the Mazda3 and the only one who identified him as selling or possessing scrap metal was Mr. Roatsey, who testified as part of a plea deal. However, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶33} In reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, this Court cannot say that the jury lost its way and created a manifest miscarriage of justice in finding Mr. Gordon guilty of receiving stolen property, obstructing official business, and identity fraud. "A conviction is not against the manifest weight because the jury chose to credit the State's version of events." *State v. Peasley*, 9th Dist. Summit No. 25062, 2010-Ohio-4333, ¶ 18. This is also not an exceptional case where the evidence presented weighs heavily in favor of the appellant and against conviction.

{¶34} Mr. Gordon's second assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY SENTENCING MR. GORDON WITHOUT COMPLYING WITH R.C. 2929.19(B)(2)(G).

{¶35} In his third assignment of error, Mr. Gordon argues that the trial court erred by failing to orally pronounce a specific amount of jail-time credit days during his sentencing hearing. We disagree.

{¶36} The Supreme Court of Ohio has stated:

[A]n order determining whether an offender receives jail-time credit affects a substantial right * * * because receiving properly determined jail-time credit implicates an offender's liberty interest in being free from unauthorized

incarceration and the right to jail-time credit is protected by at least three statutory provisions.

*State v. Thompson*, 147 Ohio St.3d 29, 2016-Ohio-2769, ¶ 9, citing R.C. 2949.08(B), R.C. 2967.191, and R.C. 2929.19. If a trial court determines at a sentencing hearing that a prison term is necessary or required, the trial court shall:

> Determine, notify the offender of, and include in the sentencing entry the number of days that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced and by which the department of rehabilitation and correction must reduce the stated prison term under section 2967.191 of the Revised Code.

R.C. 2929.19(B)(2)(g)(i).

{¶37} At Mr. Gordon's sentencing hearing, the trial court stated: "We'll give you credit for the time you have served. I don't know that we have an accurate statement of that. The probation department will make an accurate finding of that [sic] credit you have at this point in time." Mr. Gordon's sentencing entry states: "Based upon an investigation conducted by the Adult Probation Department, the defendant is given credit for **111** days served in the Summit County Jail as of the date of sentencing * * *." (Emphasis sic.).

{¶38} Mr. Gordon did not object at the trial court level and has forfeited all but plain error. *See State v. Wallace*, 9th Dist. Lorain Nos. 14CA010609, 14CA010610, 2015-Ohio-4222, ¶ 20. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "[The] error must be obvious and have a substantial adverse impact on the integrity of and the public's confidence in judicial proceedings." *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist.1995). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Elkins*, 9th Dist. Summit No. 19684, 2000 WL 1420285, *8 (Sept. 27, 2000). Notice of plain error "is to be taken with the utmost caution, under exceptional

circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶39} Mr. Gordon concedes that he was granted jail-time credit in his sentencing entry, but argues that he was denied the ability to contest the amount of credit or seek a hearing under R.C. 2929.19(B)(2)(g)(ii) because the trial court failed to determine the exact number of days that he would be credited in open court during the sentencing hearing. We cannot agree that Mr. Gordon was denied the ability to seek a hearing under R.C. 2929.19(B)(2)(g)(ii). R.C. 2929.19(B)(2)(g)(ii) states: "In making a determination under division (B)(2)(g)(i) of this section, the court shall consider the arguments of the parties and conduct a hearing if one is requested." Mr. Gordon does not allege that he requested a hearing and that his request was denied. At the sentencing hearing, the parties made no arguments regarding jail-time credit, nor did either side seek a hearing under R.C. 2929.19(B)(2)(g)(ii). There is nothing in the record to support a claim that Mr. Gordon was denied the ability to request a hearing.

{¶40} We also cannot agree with Mr. Gordon that he was denied the ability to contest his jail-time credit amount. Mr. Gordon had two separate avenues readily available to him to challenge his jail-time credit amount. "The Supreme Court of Ohio has indicated that the failure of a trial court to calculate jail-time credit is 'remediable in the ordinary course of law by appeal or motion for jail-time credit.'" *State v. Clark*, 9th Dist. Summit No. 26673, 2013-Ohio-2984, ¶ 16, quoting *State ex rel. Williams v. McGinty*, 129 Ohio St.3d 275, 2011-Ohio-2641, ¶ 2. Thus, Mr. Gordon could have challenged the accuracy of his jail-time credit amount in his direct appeal or availed himself of R.C. 2929.19(B)(2)(g)(iii), which states, in part:

> The sentencing court retains continuing jurisdiction to correct any error not previously raised at sentencing in making a determination under division (B)(2)(g)(i) of this section. The offender may, *at any time after sentencing*, file a motion in the sentencing court to correct any error made in making a

determination under division (B)(2)(g)(i) of this section, and the court may in its discretion grant or deny that motion.

(Emphasis added.). Even if the trial court denied his motion, he could appeal the order, as a trial court's denial of a motion for jail-time credit filed pursuant to R.C. 2929.19(B)(2)(g)(iii) is a final, appealable order. *Thompson*, 147 Ohio St.3d 29, 2016-Ohio-2769 at ¶ 13.

{¶41} In support of his argument, Mr. Gordon asserts that the number of days of credit "must be specifically stated on the record," citing to our decision in *State v. Clark*, 9th Dist. Summit No. 27511, 2016-Ohio-91, ¶ 25. However, that was not the holding in *Clark*. We reversed and remanded in *Clark* partly because the sentencing entry granted a specific amount of jail-time credit days "as agreed to by all parties" even though "[n]either party nor the trial court mentioned any jail-time credit at the sentencing hearing." (Emphasis deleted.) *Id.* at ¶ 24-25. Here, there was no alleged agreement regarding jail-time credit stated in the entry, nor did the trial court remain silent as to Mr. Gordon's right to jail-time credit during the sentencing hearing.

{¶42} Mr. Gordon also relies on this Court's decision in *State v. Santamaria*, 9th Dist. Summit No. 26963, 2014-Ohio-4787. However, that case is distinguishable from Mr. Gordon's case in that the trial court in *Santamaria* "failed to properly calculate Mr. Santamaria, Jr.'s jail-time credit at the resentencing hearing *and* include this calculation in the sentencing entry * * *." (Emphasis added.) *Id.* at ¶ 10. Here, although the trial court did not orally state a specific amount of days credit at the sentencing hearing, the court nonetheless calculated a specific amount of jail-time credit and that calculation is reflected in the sentencing entry. *See State v. Boone*, 9th Dist. Summit No. 26104, 2013-Ohio-2664, ¶ 26.

{¶43} Mr. Gordon summarily states in a single sentence that he "also disputes he is only entitled to 111 days of credit." He fails to advance or support this argument any further and, consequently, this Court will not construct an argument on his behalf. *See* App.R. 16(A)(7);

*Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out."). Mr. Gordon has not established how any outcome or his jail-time credit amount would have been different but for the trial court's alleged error. *See Elkins*, 2000 WL 1420285 at *8. As Mr. Gordon could have argued any inaccuracy in the amount in his direct appeal or in a motion for jail-time credit, he has not shown how he has been prejudiced and we therefore decline to notice any plain error here. This is not an exceptional circumstance where plain error should be noticed to prevent a manifest miscarriage of justice. *See Long*, 53 Ohio St.2d 91 at paragraph three of the syllabus.

{¶44} Mr. Gordon's third assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

MR. GORDON WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO OBJECT TO THE TRIAL COURT'S FAILURE TO SENTENCE MR. GORDON IN ACCORDANCE WITH R.C. 2929.19(B)(2)(G).

{¶45} In his fourth assignment of error, Mr. Gordon argues that his trial attorney was ineffective for failing to object at his sentencing hearing and failing to request a hearing to determine his jail-time credit. We disagree.

{¶46} Because we have already concluded above that the trial court did not err in Mr. Gordon's third assignment of error, his fourth assignment of error must fail. *See State v. Daniels*, 9th Dist. Summit No. 26406, 2013-Ohio-358, ¶ 24.

{¶47} Mr. Gordon's fourth assignment of error is overruled.

III.

{¶48} Mr. Gordon's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.