[Cite as *In re T.M.*, 2018-Ohio-2500.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: T.M.

C.A. No.     28804

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DL 17-08-001295

DECISION AND JOURNAL ENTRY

Dated: June 27, 2018

SCHAFER, Presiding Judge.

{¶1}    Appellant-Defendant, T.M., appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, which adjudicated him to be a delinquent child.  We reverse in part and remand.

I.

{¶2}    In addition to several traffic citations, a complaint was filed on August 6, 2017, charging T.M. (d.o.b. 3/3/02) with one count of receiving stolen property, in violation of R.C. 2913.51, a felony of the fifth degree if committed by an adult and one count of obstructing official business in violation of R.C. 2921.31, a misdemeanor of the second degree if committed by an adult.  The matter ultimately proceeded to adjudication and following a hearing, the juvenile court adjudicated T.M. to be delinquent on both counts.

{¶3}    T.M. filed this timely appeal, raising one assignment of error for our review.

II.

**Assignment of Error**

**The verdict of the trial court was against the manifest weight of the evidence since the state of Ohio failed to prove each and every element of the crime charged beyond a reasonable doubt.**

{¶4} In his sole assignment of error, T.M. contends that the trial court's decision to adjudicate him a delinquent child by reason of receiving stolen property was against the manifest weight of the evidence. We agree. T.M. has not challenged the trial court's decision to adjudicate him a delinquent child for obstructing official business and we limit our analysis accordingly.

{¶5} To determine whether a criminal conviction is against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Nonetheless, "[a]n appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases." *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶6} T.M. was adjudicated delinquent by reason of receiving stolen property in violation of R.C. 2913.51(A). That statute provides as follows: "No person shall receive, retain,

or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." Pursuant to R.C. 2901.22(B),

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶7} Officer Woolley of the City of Akron Police Department was the only witness to testify at trial. Officer Woolley stated that on August 6, 2017, he was working patrol with a partner in a police cruiser. He stated that at approximately 4:30 p.m. the driver of a black Chevy Impala with at least four occupants caught his attention because the driver of the vehicle did not appear to be old enough to be operating a motor vehicle. He stated that he turned the cruiser around and began to follow the Impala. He then stated that the Impala was driving at a high rate of speed and trying to elude the officers. Officer Woolley testified that when he did catch up to the Impala he witnessed the vehicle barely slow down for a stop sign. At that point, he initiated the overhead lights on his cruiser in order to make a traffic stop for the observed traffic violation. However, the Impala did not pull over and continued driving. Officer Woolley stated he then "observed the driver door of the vehicle open up, as the vehicle was still moving, and the driver of the vehicle fled from the vehicle." The Impala then continued to move without the driver and crashed into another vehicle that had pulled over for the lights and siren. Officer Woolley testified that he paralleled the driver as he ran on the sidewalk until he turned to cut through backyards. At that time, Officer Woolley exited his cruiser and chased the driver on foot until apprehending him three to five minutes later.

**{¶8}** Officer Woolley then identified T.M. as the driver of the vehicle. He stated that when he ran T.M.'s information through LEADS, he found that T.M. did not have a valid driver's license. Additionally, Officer Woolley's partner was able to run the Impala's information and determined that the vehicle "was an entered stolen automobile." Officer Woolley asked T.M. why he ran and T.M. responded that he fled because he didn't have a license. Although Officer Woolley stated he looked at the vehicle, he did not do the inventory. On cross-examination, Officer Woolley did not recall whether there were keys in the vehicle. Additionally, Officer Woolley stated that to his knowledge there were no documents identifying the owner or "anything else" in the vehicle that would indicate to someone the vehicle was stolen.

**{¶9}** In its order adjudicating T.M. delinquent, the trial court stated:

The Court finds that [T.M.] was trying to avoid the police because he was aware that he was violating the law. While [T.M] told police he ran because he did not have a license, the Court finds that [T.M.] knew that the car was stolen. The Court makes this inference based upon the above stated facts together with the fact that [T.M.] is only 15 years old and does not have a valid license. *Further, the Court finds that [T.M.] failed to provide an explanation as to why he was in possession of recently stolen property.* See State [v.] Gordon, [9th Dist. Summit No. 28331, 2017-Ohio-7147]; State v. Warren, [9th Dist. Summit No. 16034, 1993 Ohio App. LEXIS 2685 (May 26, 1993)]; State v. Arthur, [42 Ohio St.2d 67 (1975)]; Barnes v. U.S., [412 U.S. 837 (1973)]. (Emphasis added.)

**{¶10}** T.M. maintains that the evidence in this case does not support his adjudication as a delinquent child because the trial "court improperly used his silence as evidence of guilt in violation of the Fifth Amendment of the United States Constitution as well as state law."

**{¶11}** Pursuant to the Fifth Amendment to the United States Constitution, no person shall be compelled to be a witness against himself. Nonetheless, the "'[p]ossession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which [a trier of fact] may reasonably draw the inference and find, in the light of the surrounding circumstances

shown by the evidence in the case, that the person in possession knew the property had been stolen.'" *State v. Arthur*, 42 Ohio St.2d 67, *68 (1975), quoting *Barnes v. United States*, 412 U.S. 837, 838 (1973).

{¶12} However, our review of the juvenile court's order and the transcript of T.M.'s adjudication hearing suggests the juvenile court misconstrued the above case law as not merely allowing a trier of fact to infer knowledge in light of the surrounding circumstances, but instead as creating a presumption of guilt, regardless of the surrounding circumstances, when a satisfactory explanation for the possession of a stolen vehicle is not given. Indeed, in explaining its reliance on the above case law, the juvenile court stated the following:

> There is no explanation at all as to how he came into possession of the vehicle and, you know, the case law, all the way up to the Ohio Supreme Court in 1973, through the Ninth District as recently as this year, seems to indicate that if a vehicle is stolen, *it really falls upon the accused to render some kind of reasonable explanation as to how they came into possession of a recently stolen vehicle*.

(Emphasis added.) Notably, all of the cases cited by the trial court involve facts where a defendant gave an explanation as to why he was in possession of the stolen item and the trier of fact was to consider this explanation with the other circumstances. T.M., however, never provided an explanation for his possession of the stolen vehicle.

{¶13} Accordingly, we conclude that the trial court improperly weighed the evidence because it incorrectly believed it was required to find T.M. delinquent based on his lack of a satisfactory explanation of his possession of the stolen car, regardless of the surrounding circumstances. In this case, the surrounding circumstances include the fact that T.M. was a minor under the legal driving age and that the responding officers never asked T.M. why he was in possession of the stolen vehicle. Rather, he was only asked why he ran from the police, to which he responded that he ran from the police because he did not have a driver's license.

Additionally, Officer Woolley stated that to his knowledge there was nothing in or about the vehicle that would indicate the vehicle was stolen.

{¶14} Therefore, T.M.'s sole assignment of error is sustained.

III.

{¶15} T.M.'s assignment of error is sustained and the judgment of the Summit County Court of Common Pleas, Juvenile Division is reversed in part and this matter is remanded for further proceedings consistent with this decision.

Judgment reversed in part,<br>
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JULIE A. SCHAFER
FOR THE COURT

CARR, J.
CALLAHAN, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.